PIKE COUNTY COAL CORPO-
RATION and Ratliff Elkhorn
Coal Company, Appellants,

v.

J.C. RATLIFF, d/b/a Ratliff Construc-
tion; Ned Pillersdorf; and Joseph
R. Lane, Appellees.

J.C. Ratliff, d/b/a Ratliff Construction,
Cross–Appellant,

v.

Pike County Coal Corporation; Ratliff
Elkhorn Coal Company; Jess Justice;
and John Swiney, Cross–Appellees.

Nos. 1998–CA–002003–MR,
1998–CA–002043–MR.

Court of Appeals of Kentucky.

March 10, 2000.

Rehearing Denied May 19, 2000.

Discretionary Review Denied
by Supreme Court March 14, 2001.

Steven D. Combs, J. Scott Kreutzer, Pikeville, for Appellant.

Joseph Lane, Ned Pillersdorf, Prestonsburg, for Appellee.

Before: GUIDUGLI, JOHNSON, and KNOPF, Judges.

## OPINION

JOHNSON, Judge.

Pike County Coal Corporation, and Ratliff Elkhorn Coal Company, have appealed from the judgment of the Pike Circuit Court which awarded the appellee, J.C. Ratliff, d/b/a Ratliff Construction, the sum of $46,964.00, pursuant to the jury's ver-

dict, predicated on a violation of KRS[1] 342.197. The trial court also awarded an attorneys' fee of $32,745.00. We agree with Pike County Coal that KRS 342.197 has no application to the facts underpinning Ratliff's claim and conclude that the judgment must be reversed and this matter remanded for dismissal of the complaint.

On January 1, 1991, Ratliff, who owned ten or eleven trucks and employed about as many truck drivers, entered into a contract to haul coal for Pike County Coal. The written contract, entitled "Coal Trucking Contract," provided that Ratliff would haul coal from Pike County Coal's Mine # 110, at the rate of $1.50 per ton. The agreement provided that Ratliff would be responsible for obtaining workers' compensation insurance coverage and black lung coverage for his employees, comprehensive automobile liability insurance for his vehicles, and general liability insurance, all in stated amounts, and that "[w]henever requested," Ratliff would "promptly furnish evidence satisfactory" to Pike County Coal that "such insurances [were] in effect." There is no question the contract's written terms provided that it was subject to termination by either Ratliff or Pike County Coal "at any time ... by giving notice to the other party." Ratliff's employees hauled coal under this contract for nearly two years until December 14, 1992, when the contract was terminated by Pike County Coal, allegedly for Ratliff's failure to provide proof that he had both workers' compensation coverage and liability coverage on his coal trucks.

On January 20, 1993, Ratliff filed a lawsuit in the Pike Circuit Court in which he alleged that Pike County Coal Corporation terminated its contract with him because he refused to violate KRS 342.197(1), a statute which prohibits the threatened discharge and/or intimidation of an employee for asserting a claim for workers' compensation benefits. He also alleged claims of tortious interference with contract and tortious interference with prospective business advantage against John Swiney, the superintendent at Mine # 110, and Jess Justice, the general manager of Pike County Coal Company.

The factual basis for Ratliff's statutory claim involved the work-related injury sustained on March 31, 1992, by one of Ratliff's employees, James "Johnny" Smith. Smith, who injured his back while operating an endloader at Mine # 110, suffered a heart attack six days after the work-related incident and was never able to work again. In May 1992, Smith filed a claim with the Workers' Compensation Board against Ratliff Elkhorn Coal Company, a subsidiary of Pike County Coal, and not his employer, Ratliff Construction Company. It is unclear from the record whether Smith filed the claim against Ratliff Elkhorn merely as a mistake attributable to the similarity in the names or intentionally.

Ratliff testified, and there is no dispute, that Justice, and Linda Johnson, another employee of Pike County Coal, looked to Ratliff to get Pike County Coal dismissed as a defendant in Smith's compensation action. Ratliff testified that he had no control over Smith's compensation claim and that despite the alleged pressure from Pike County Coal, he "at no time attempted to coerce or harass Mr. Smith ... because he knew it was wrong." However, on November 4, 1992, in response to Pike County Coal's request, Ratliff caused his attorney to provide Smith's attorney with the name of Ratliff's insurance company and the number of the policy providing workers' compensation coverage for his employees that was in force at the time of Smith's injury. A copy of this letter was sent to Pike County Coal and the Workers' Compensation Board. The claim against Pike County Coal was eventually dismissed and Smith's claim against Ratliff was defended by Ratliff's insurer, Fireman's Fund. Smith was ultimately award-

ed benefits. However, before Pike County Coal was dismissed from the workers' compensation action, it terminated its contract with Ratliff.

Ratliff's claim for retaliatory termination against Pike County Coal survived more than one motion for summary judgment. The case was set for trial on several occasions and trial finally commenced in January 1997. At the beginning of the trial, the trial court granted summary judgment on the tort claims against the individual employees of Pike County Coal, Justice and Swiney. Although it is difficult to hear the ruling of the trial court on the video tape, it appears, as Ratliff states in his brief, that the individuals were dismissed as parties under the theory that they were acting within the scope of their employment for the sole benefit of the corporation for which they were employed.

The trial was not completed due to the illness of the trial judge, and the matter was finally tried to conclusion in March 1998. Ratliff convinced the jury that Pike County Coal's termination of his hauling contract for his alleged failure to have workers' compensation coverage and automobile liability coverage on December 14, 1992, was a pretext and that the real reason his contract was terminated was his failure to harass Smith with respect to his workers' compensation claim. The jury was instructed to find for Ratliff if it were "satisfied from the evidence that the substantial and motivating factor in the decision to terminate the Coal Trucking Contract" was "the Workmen's [sic] Compensation claim filed by James 'Johnny' Smith against Ratliff Elkhorn Coal Company." The jury answered in the affirmative and awarded Ratliff damages representing lost profits of $46,964 and $0 for emotional distress. The trial court's refusal to instruct the jury on the claim of punitive damages and its summary dis-

missal of Justice and Swiney form the basis for Ratliff's cross-appeal. After entry of the judgment, the trial court awarded Ratliff's attorneys a fee of $32,745 based on an hourly rate of $100 per hour. This appeal and cross-appeal followed.

■ In its direct appeal, Pike County Coal argues that the trial court erred in allowing Ratliff, an independent contractor, to pursue a claim for retaliatory discharge under KRS 342.197. Ratliff, on the other hand, contends that he is entitled to the statute's protection, that the case "does not involve the construction of KRS 342.197," and that the "action is controlled by the literal language" of the statute. KRS 342.197 reads in pertinent part:

> (1) No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter.
>
> . . . .
>
> (3) Any individual injured by any act in violation of the provisions of subsection (1) or (2)[2] of this section shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained by him, together with the costs of the law suit [sic], including a reasonable fee for his attorney of record.

This statute is a codification of the ruling of the Supreme Court of Kentucky in *Firestone Textile Co. Division v. Meadows*,[3] which recognized a cause of action for "retaliatory discharge when the discharge is motivated by the desire to punish [an] employee for seeking [workers' compensation] benefits to which he is entitled by law." The statute's purpose and the Legislature's intent is "to protect employees from acts *by their employers* intended to prevent such employees from exercising their rights under the Workers' Compen-

---

2. Subsection (2) of the statute concerns forbidden employment practices with respect to individuals with pneumoconiosis and has no application to the case *sub judice*.

3. Ky., 666 S.W.2d 730, 734 (1983).

sation Act [emphasis added]."[4] Most states, either by statute or case law, recognize the viability of such a claim to ensure that employees are not penalized for pursuing their legal rights to obtain appropriate compensation for work-related injuries.[5]

Pike County Coal insists that the statute is not designed "for the protection of third party employers who are trying to cheat the Worker's [sic] Compensation Board and their general contractor," and that the "[s]tatute should not be arbitratorily [sic] expanded to cover such circumstances." Ratliff counters with the argument he was an "individual protected under KRS 342.197(3)" and that he should be allowed to pursue its remedies to compensate him "for his courageous decision not to harass James 'Johnny' Smith." We agree with the appellant that to give effect to Ratliff's expansive interpretation of the statute as providing protection to the *employer* liable for the workers' compensation coverage would be contrary to the normal rules applicable to the construction of statutes.

In denying Pike County Coal's motion for summary judgment, the trial court reasoned that while the statute is primarily designed to protect injured workers, subsection (3) does not limit actions to "employees," but rather provides remedies to "[a]ny individual injured by any act in violation of the provisions of subsection (1) or (2)." We can envision many situations in which an individual other than the injured employee, such as a co-worker, might be subjected to retaliation by the employer in an effort to impede the injured worker's pursuit of a workers' compensation claim. Clearly, to insure the integrity of the underlying policies of the statute, we would not hesitate to construe

the "any individual" language to encompass any person who sought to protect his own rights to pursue a workers' compensation claim as well as any person who acted in support of another's pursuit of those rights and who suffered reprisals from the employer of the injured employee.

Nevertheless, the gist of Ratliff's claim is that Pike County Coal retaliated against him because he refused to violate the anti-discrimination provisions of KRS 342.197(1), with respect to his own employee's right to seek workers' compensation benefits. Thus, the issue is whether the statute provides a cause of action by an employer for an alleged attempted violation of KRS 342.197(1), against a business with which it has contracted, but which has no responsibility for the payment of workers' compensation benefits.

In determining whether the parameters of the statute are sufficiently broad to include Ratliff's claim, we must examine not only the particular words employed, but the statute as a whole and its underlying purpose.[6] Given the statute's purpose, and considering its history, it is apparent that it was not intended to apply under the factual circumstances presented in this case.[7] The Legislature's intent was to codify an exception to the terminable-at-will doctrine, not to benefit employers, or to subject a contracting party, who is not otherwise responsible for the payment of workers' compensation benefits, to claims of retaliation. Simply, in our view, the statute does not provide a remedy to an employer for a reprisal it may experience for refusing to engage in prohibited conduct, much less does it compromise the rights and obligations arising in contractual relationship outside the employer/employee context.[8]

4. *Overnite Transportation Co. v. Gaddis*, Ky. App., 793 S.W.2d 129, 132 (1990).

5. *See* Larson, *Workers' Compensation Law*, § 68.36(a)(1999).

6. *Overnite, supra* at 131–32.

7. *See Nelson Steel Corp. v. McDaniel*, Ky., 898 S.W.2d 66 (1995) (discharge not actionable under KRS 342.197 where it was determined to be for economic reasons).

8. Ratliff was not an employee of Pike County Coal. The agreement between Pike County Coal and Ratliff established an agency rela-

Having reviewed the record in this action, we are also convinced that Ratliff failed to present any evidence that Pike County Coal actually attempted to get Ratliff to commit a *Firestone* violation. Ratliff testified that employees of Pike County Coal wanted him to alert his employee, Smith, that he had filed against the wrong employer and that they wanted Smith to dismiss, not his claim, but his claim against Pike County Coal. The evidence is undisputed that Ratliff had insurance covering the injury and that Smith had indeed filed against the wrong employer. There is no evidence that Pike County Coal had any responsibility for Smith's claim. Smith himself testified that he worked for Ratliff on the day that he was injured. Smith testified that part of his duties in hauling coal for Ratliff was to load the trucks at Mine # 110. Smith was not asked, nor did he explain, why he originally filed his claim against Pike County Coal, but there is no question that once his attorney was given the information from Ratliff concerning the insurer providing coverage for Smith, Pike County Coal was dismissed from the workers' compensation action without objection by Smith or Ratliff.

There was no testimony from which the jury could reasonably infer that Pike County Coal asked Ratliff to harass or coerce Smith with the purpose of dropping his workers' compensation claim. There is no evidence that Pike County Coal asked Ratliff to take any type of adverse employment action against Smith. Pike County Coal did attempt to get Ratliff to take responsibility for Smith's workers' compensation claim as required under the terms of the contract between Ratliff and Pike County Coal. Thus, while the jury found that the termination was caused by Smith's workers' compensation claim, it is the opinion of this Court, considering the explicit terms of the coal hauling contract, that the reason did not constitute a viola-

tion of KRS 342.197(1) in the first instance to trigger the remedies contained in subsection (3) of the statute.

Accordingly, the judgment of the Pike Circuit Court is reversed, and this matter is remanded for dismissal of the complaint. Further, our resolution of the application of KRS 342.197 renders the remaining issues raised in the direct appeal and the cross-appeal moot.

ALL CONCUR.

---

tionship between a principal and an independent contractor and specifically provided that the "CONTRACTOR [Ratliff] shall conduct all operations in CONTRACTOR's own name and as an independent contractor[.]"