Larry D. BEALE, Director of Special Fund, Appellant,

v.

FAULTLESS HARDWARE; ACCO Babcock; Luis Saez; Walter Turner, Administrative Law Judge; Workers' Compensation Board, Appellees.

FAULTLESS HARDWARE and ACCO Babcock, Appellants,

v.

Larry D. BEALE, Director of Special Fund; Luis Saez; Walter Turner, Administrative Law Judge; Workers' Compensation Board, Appellees.

Nos. 91–SC–000145–WC, 91–SC–000181–WC.

Supreme Court of Kentucky.

Sept. 3, 1992.

John E. Stephenson, Labor Cabinet, Special Fund, Louisville, for Special Fund.

Walter E. Harding, William P. Swain, Boehl, Stopher, Graves and Deindoerfer, Louisville, Jon E. Pancake, Hardy, Terrell & Boswell, Paducah, for Faultless Hardware and Acco Babcock.

James S. Miller, Francis Law Office, Cadiz, for Luis Saez.

DAVID A. PIKE, Special Justice.

This case originates from a claim for benefits filed with the Department of Workers Claims on behalf of Luis Saez based on disability sustained as a result of an injury to his back which occurred on July 25, 1986. Saez was employed by Faultless Hardware at the time of this injury. He began working with Faultless Hardware in 1971. During his employment tenure at Faultless, he experienced several work-related injuries to his back.

In September of 1974 Saez injured his lower back while performing his duties at work. This injury required two surgical interventions before he was able to return to employment, and he received a 20% permanent partial disability settlement paid entirely by the employer, Faultless Hardware.

Similarly, in October of 1982 Luis Saez fell down the stairs while on the job at Faultless and again injured his back. The claimant underwent two additional surgical interventions as a result of this second injury and did not return to work until August of 1984. This injury was settled for an additional 31.12% permanent partial disability, with Faultless Hardware paying

two-thirds (⅔) of the settlement and the Special Fund contributing one-third (⅓).

In July of 1986 Saez sustained yet another injury while working at Faultless when he bent over to pick up a small part which he had dropped on the floor. Saez had a sudden onset of extreme low back pain and could not get up. The parties to this appeal stipulated that Saez was totally occupationally disabled after his final injury in July of 1986.

In addition to filing a claim for benefits based upon the injury sustained in July of 1986, Saez also moved to re-open his two (2) prior claims for injuries sustained in 1974 and 1982. His motion to re-open these prior claims was consolidated with the pending action.

Saez's claim was submitted to an Administrative Law Judge who considered expert and lay testimony. The ALJ findings can be summarized as follows:

1. The 1986 occurrence was a distinct event of injury rather than a mere worsening of condition.
2. This case is not governed by *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222 (1976), because there is no evidence of a series of "mini-traumas."
3. The injury of 1986 would not have independently caused all of Saez's occupational disability.
4. The actual extent of occupational disability attributable to the 1986 injury is 0%.
5. The degree of occupational disability which existed immediately prior to the subject injury, without regard to its effect, is 51.12%, being the prior active disability for which Saez had already been compensated in his two prior claims.
6. The remaining 48.88% occupational disability is the result of excess disability, and all of this portion falls upon the Special Fund.
7. None of the excess occupational disability was allocated to the employer, Faultless Hardware.

The Special Fund appealed to the Workers' Compensation Board challenging the ALJ apportionment. The Workers' Compensation Board reversed the ALJ, finding that *Haycraft, supra,* applied not only to gradual type injuries, but also to injuries from a series of traumas, citing *Jones & Laughlin Steel Corp. v. Goben*, Ky.App., 600 S.W.2d 481 (1980) and *Beale v. W.W. Corp.*, Ky.App., 776 S.W.2d 841 (1989). The Workers' Compensation Board interpreted *Jones & Laughlin Steel Corp., supra,* and *Rapid Industries, Inc. v. Clark,* Ky.App., 715 S.W.2d 902 (1986), to mean that the Special Fund was not liable for Saez's 1986 injury, and the totality of the liability for Saez's 1986 injury falls upon the employer, Faultless Hardware, excluding therefrom any active prior disability.

An appeal by Faultless Hardware to the Kentucky Court of Appeals followed. The Court of Appeals reversed the Workers' Compensation Board and reinstated the decision of the ALJ by applying the doctrine of *res judicata*. In reliance upon *Parson v. Union Underwear Co.*, Ky.App., 758 S.W.2d 43 (1988), the Court of Appeals seized upon the settlement of the 1982 injury entered by the employer and the Special Fund as proof that the Special Fund had already "admitted" that the injured worker had a dormant non-disabling condition. The Court of Appeals held that the Special Fund cannot now dispute that it has accepted responsibility for the worker's disability.

Both Faultless Hardware and the Special Fund appealed to the Kentucky Supreme Court. For the reasons set out in this opinion, we affirm the Court of Appeals, but reject the Court of Appeals rationale.

The Court of Appeals' reliance on *Parson, supra,* is misplaced. *Parson* involved two claims, the first of which was settled for a 20% occupational disability. Several years later, while working for the same employer, Parson suffered a subsequent injury that was the subject of his appeal. Because the Workers' Compensation Board had found that the preexisting disability was due solely to the prior injury and there was no evidence that Parson's condition had changed since the settlement, the Court of Appeals held the parties were

bound by the percentage of occupational disability contained in this settlement agreement.

The Court in *Parson* relied on *Moore v. Gas & Electric Shop*, 216 Ky. 530, 287 S.W. 979 (1926). In *Moore, supra,* however, the facts held to be *res judicata* had been fully litigated. They were not, as in *Parson* itself or in the instant case, the product of a negotiated settlement. More importantly, *Moore* was not a workers' compensation case and, therefore, was not subject to the special rules of KRS Chapter 342.

■ While a final award of compensation benefits has the same finality as a court judgment, KRS 342.125 provides some relief from the finality of judgments in workers' compensation cases and allows a claim to be re-opened after the award is final under specified circumstances. *Keefe v. O.K. Precision Tool & Die Co.*, Ky.App., 566 S.W.2d 804 (1978). It is critical to note that a KRS 342.125(3) re-opening treats awards pursuant to approved settlements differently from re-opening awards made pursuant to fully litigated claims. To interpret *Parson* in the manner implied by the Court of Appeals would be contrary to KRS 342.125(3) which in effect prohibits the applications of *res judicata* and collateral estoppel on a motion to re-open a settled workers' compensation claim. KRS 342.125(3) states:

> Where an agreement has become an award by approval of the administrative law judge, and a reopening and review of such an award is initiated, no statement contained in the agreement, whether as to jurisdiction, liability of the employer, nature and extent of disability, or as to any other matter, shall be considered by the administrative law judge as an admission against the interests of any party. The parties may raise any issue upon reopening and review of this type of award which could have been considered upon an original application for benefits.

Therefore, despite the fact that on a motion to re-open the percentage of occupational disability contained in a settlement agreement would not be conclusive as to the actual disability on that date, under *Parson* such a fact is conclusive in a subsequent claim for a subsequent injury. Clearly, *Parson's* use of *res judicata* in settled workers' compensation cases exceeds the legislative intent expressed in KRS 342.-125(3).

■ In addition to being contrary to KRS 342.125(3), the application of *res judicata* by the Court of Appeals would undermine the policy of encouraging settlements in workers' compensation cases. Accordingly, *Parson* is overruled to the extent that in the litigation of a claim for a subsequent injury, it would make *res judicata* a fact contained in an agreement to settle a prior workers' compensation claim. This decision in no way affects the rule that absent a re-opening or the litigation of a claim for a subsequent injury, an approved settlement of workers' compensation claim is final and binding on the parties to the agreement.

■ Although we have rejected the Court of Appeals *res judicata* analysis, this does not answer the fundamental issue presented in this appeal regarding how, or if, liability for Luis Saez's final 1986 injury should be apportioned between the Special Fund, and the employer.

Resolution of this apportionment issue requires an examination of the ALJ's findings to determine whether there was substantial evidence to support them. *O.K. Precision Tool & Die Co. v. Wells*, Ky., 678 S.W.2d 397 (1984). The ALJ made specific Findings of Fact, the most important of which was that the 1986 occurrence was a distinct event of injury and not a mere worsening of a prior condition.

After making these findings, the ALJ correctly apportioned the disability using the *Young v. Fulkerson*, Ky., 463 S.W.2d 118 (1971), formula finding that the 1986 injury itself would have caused no permanent occupational disability in and of itself, and that the remaining disability (less the preexisting active component) was "excess disability" for which the Special Fund is responsible.

The Special Fund does not challenge these findings of fact, but instead argues that the 1974 and 1982 injuries sustained by Saez and his subsequent work-related injury in 1986, compel apportionment as a

matter of law according to *Haycraft*. Since only one employer was involved through all three injuries, the Special Fund urges that the employer should accept all liability under *Haycraft*. The ALJ indicated in his decision that *Haycraft* did not apply because there was no evidence of either arousal of a dormant preexisting condition caused by the work at Faultless or a series of work-related mini-traumas.

Since substantial evidence in this case supports the ALJ's finding that the 1986 injury was a discrete and identifiable event, the real dispute between the parties is under what conditions the *Haycraft* apportionment doctrine applies. The Special Fund invites us to extend the *Haycraft* apportionment doctrine to include specific subsequent injury events in addition to gradual insidious cumulative traumas or a series of mini-traumas; but this is an invitation we cannot accept.

■ The Special Fund in Kentucky is an example of what is often referred to as a "subsequent injury fund" or "second injury fund" in other jurisdictions. These entities are created to serve two major policy objectives. First, they are designed to encourage the hiring and retention of disabled workers with either latent or obvious disabilities. Second, these funds spread the risk associated with hiring and retaining disabled workers because the last employer should not be asked to bear the total burden when a disability arises only "in part" from the last employment.

*Haycraft* and *Goben, supra*, did not involve a previously disabled employee who received a subsequent compensable injury. Indeed, Haycraft's onset of disability began on the day he was visiting his mother in the hospital, spending most of the day sitting in a chair. Goben's onset of disability occurred at home while spreading gravel on his driveway. The Court's opinion clearly indicated that Haycraft's history "does not mention any event that would be characterized as an accident in the ordinary lay sense of the word." *Haycraft v. Corhart Refractories Co.*, Ky., 544 S.W.2d 222, 226 (1976).

Admittedly, Haycraft had some prior active disability, and the Court's opinion clearly notes that such active disability is excluded. However, the compensability of Haycraft's claim arose not from his prior active disability, but rather from the culmination of a degenerative disc condition into an active physical impairment. Haycraft's condition was characterized as a dormant pre-existing condition which was work-related.

In the instant case, the ALJ did not find a series of non-disabling mini-traumas or a gradual cumulative physical breakdown caused by employment, but rather found that Saez had sustained two prior discrete work-related injuries resulting in a permanent occupational disability that had been settled for permanent partial disability. The ALJ found there was no arousal of a pre-existing dormant condition either work-related or nonwork-related, but did find that the 1986 occurrence was a distinct event of injury. Those findings, which have not been challenged, make the *Haycraft* doctrine inapplicable to this case.

We believe that the ALJ has discretion in applying the varying theories of law and remedies related to apportionment and excess liability depending on the facts of a particular case. Having determined that the injury independently did not cause all of the disability, the ALJ was mandated to apportion under *Young, supra*. We will not disturb the ALJ's conclusion.

The ALJ correctly applied the law, he correctly apportioned the liability, and his decision should be reinstated. Any other approach would thrust all liability on the employer in such fact patterns, thereby creating a significant disincentive to retain disabled employees. Our findings ratify the ALJ's characterization of this situation as a "garden variety" excess disability case which is subject to apportionment under KRS 342.120.

The decision of the Court of Appeals to reverse the Workers' Compensation Board and to affirm the ALJ is affirmed.

All concur.