COMMERCIAL DRYWALL, Appellant,

v.

G.D. WELLS; Hon. Richard H. Campbell, Jr., Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 92–CA–2230–WC.

Court of Appeals of Kentucky.

Aug. 20, 1993.

J. Joseph Cohen, Louisville, for appellant.

Steve Robbins, Richmond, for appellee, Wells.

Before GUDGEL, HUDDLESTON and McDONALD, JJ.

McDONALD, Judge.

This matter is before us on the appellant's (Commercial Drywall's) petition for review of the final decision of the Workers' Compensation Board (board) rendered August 14, 1992. The board reversed the administrative law judge's (ALJ's) Opinion, Award and Order of February 21, 1992, which overruled the claimant employee's (Wells') motion to reopen for additional disability benefits pursuant to KRS 342.125(1). The ALJ found that Wells had been totally and permanently occupationally disabled since the time of his settlement despite the fact that he entered a settlement agreement based upon a disability rating of 50.5%. Accordingly, the ALJ reasoned that Wells had not shown a "change in

occupational disability" as required to support a motion to reopen. *See* KRS 342.125. The ALJ did order "appropriate rehabilitation evaluation" pursuant to KRS 342.710.

The background facts of this case are straightforward and uncontroverted. Wells fell from a scaffold on September 11, 1987, while in the employment of Commercial Drywall. Wells was employed as a drywall hanger. Both of Wells' elbows were fractured as a result of the fall. Wells began seeing Dr. John R. Allen, an orthopedic surgeon, in December, 1987, for treatment. Dr. Allen performed surgery on Wells' left elbow on March 1, 1988. In May, 1988, Wells' condition appears to have become increasingly worse including pain in both elbows. Dr. Allen advised Wells about future complications and possible additional surgery. In July, 1988, Dr. Allen gave Wells an impairment rating, based on the AMA guidelines, of 52% to the whole person.

On November 14, 1988, Wells entered into a settlement agreement with his employer, Commercial Drywall, based upon a 50.5% permanent partial disability. The board approved the settlement on November 28, 1988.

Dr. Allen apparently released Wells to return to try some work with restrictions that he not do heavy strenuous work and that there should be no significant use of the right arm. In a letter dated June 30, 1988, to the employer's insurance carrier, Dr. Allen expressed reservations about Wells being able to perform work as a drywaller, although he thought Wells could do some work. Dr. Allen stated, upon questioning, that Wells has been unable to work all along as far as drywalling, and that he only allowed him to work at light work that did not require him to use his arms before November, 1988. Dr. Allen testified further that before November, 1988, he allowed him to try some work if it was not drywalling, but that now (1989–1990) he will not allow him to work at anything.

Wells himself testified that he feels he has been unable to work since he was injured. He testified that the doctor told him to go out and try to work and that he would go and try. He said that since the time of the settlement he tried to work for about eight different employers. He would start working and it would only last about two weeks, and then his arms would swell and he would have to go back to the doctor.

Wells contends that the board properly reversed the decision of the ALJ. He argues that the approved settlement agreement between himself and Commercial Drywall became an award of the board, and that res judicata made it binding on the ALJ. Thus, he claims, the ALJ had no choice but to find that his occupational disability at the time he settled was 50.5% and had "changed" to total disability—as the ALJ found him to now suffer a 100% disability. Therefore, asserts Wells, he was entitled to a total disability award. Wells concedes that the ALJ had the right to review the previous evidence, read it and use it in addition to the new evidence produced on the motion to reopen. However, citing *Parson v. Union Underwear Co.,* Ky.App., 758 S.W.2d 43 (1988), he claims the ALJ had no right to go back behind the award of the board and change the percentage of occupational disability agreed upon in the settlement that was approved by the board. Thus, relying on *Parson, supra,* Wells concludes the ALJ was bound to the settlement agreement and required to find him 50.5% disabled at the time he settled.

The ALJ factually found Wells to be totally and permanently disabled at the time of settlement *and* currently. As stated in the Opinion, Award and Order:

> In the claim *sub judice*, Plaintiff [Wells] has failed to meet his burden of proof or overcome his risk of non-persuasion in establishing that he has undergone a worsening of his condition that has culminated in total occupational disability. Based on Plaintiff's testimony and that from Dr. Allen, it appears that Plaintiff was in fact totally and permanently disabled at the time he entered into the settlement agreement approved on November 28, 1988. Although Plaintiff's physical condition may have deteriorated to some extent, he has essentially been unable to work since the date of injury. . . .

Having reviewed the record, we must conclude that there was substantial evidence to support the ALJ's finding. As a

reviewing court, we may only reverse such finding if "the evidence is so overwhelming as to compel a finding" in Wells' favor. *See e.g., Paramount Foods, Inc. v. Burkhardt,* Ky., 695 S.W.2d 418 (1985). While there is ample evidence that Wells' physical condition has gotten worse since the settlement, such that he has undergone three additional surgical procedures and now has no significant use of his right arm, such does not prove that he was something less than totally occupationally disabled at the time of the settlement.

> When a claimant seeks an increase in compensation because of a change in occupational disability in a reopening proceeding, he or she must prove by competent evidence that a significant change in occupational disability in fact exists....

*Peabody Coal Company v. Gossett,* Ky., 819 S.W.2d 33, 36 (1991).

While we are extremely sympathetic to Wells' situation, we have no choice but to conclude that the board's reliance on *Parson* cannot stand in light of the Kentucky Supreme Court's decision in *Beale v. Faultless Hardware,* Ky., 837 S.W.2d 893 (1992).

In the *Parson, supra,* case, our Court was faced with a situation concerning apportionment between an agreed settlement and a proceeding for a subsequent injury. The *Parson* Court stated:

> It is well established that res judicata applies to workers' compensation cases. *Keefe v. O.K. Precision Tool & Die Co.,* Ky.App., 566 S.W.2d 804 (1978); 3 A. Larson, *The Law of Workmen's Compensation* § 79.72(a) (1983). When the Board approves a settlement, it becomes legally equivalent to an award, *Young v. Varney,* Ky., 469 S.W.2d 344 (1971), and an approved settlement is held to the same standard under KRS 342.125 as fully litigated claims in reopening procedures. (Citations omitted).
>
>     . . . .
>
> ... In this jurisdiction, an agreed judgment free from fraud or duress is binding upon the parties, the same as if the claim

was litigated and decided by a tribunal. (Citations omitted)....

*Parson* 758 S.W.2d at 44.

In reliance upon and application of the rationale of the *Parson* decision, the board reversed the ALJ. However, in *Beale, supra,* the Kentucky Supreme Court specifically rejected the Court of Appeals res judicata analysis and overruled *Parson* "to the extent that in the litigation of a claim for a subsequent injury, it would make *res judicata* a fact contained in an agreement to settle a prior workers' compensation claim." The *Beale* Court continued to state that absent a *re-opening* or the litigation of a claim for a subsequent injury, an approved settlement of a workers' compensation claim is final and binding on the parties to the agreement.

KRS 342.125(3) provides:

> Where an agreement has become an award by approval of the administrative law judge, and a reopening and review of such an award is initiated, no statement contained in the agreement, whether as to jurisdiction, liability of the employer, nature and extent of disability, or as to any other matter, shall be considered by the administrative law judge as an admission against the interests of any party. The parties may raise any issue upon reopening and review of this type of award which could have been considered upon an original application for benefits.

As stated in *Beale, supra* 837 S.W.2d at 896:

> While a final award of compensation benefits has the same finality as a court judgment, KRS 342.125 provides some relief from the finality of judgments in workers' compensation cases and allows a claim to be re-opened after the award is final under specified circumstances. *Keefe v. O.K. Precision Tool & Die Co.,* Ky.App., 566 S.W.2d 804 (1978). It is critical to note that a KRS 342.125(3) re-opening treats awards pursuant to approved settlements differently from re-opening awards made pursuant to fully litigated claims. To interpret *Parson* in the manner implied by the Court of Appeals would be contrary to KRS 342.125(3) which in effect prohibits the applications of *res judicata* and collat-

eral estoppel on a motion to re-open a settled workers' compensation claim.

■ Thus, concluded our Supreme Court, on a motion to reopen, the percentage of occupational disability contained in a settlement agreement would *not* be conclusive as to the actual disability on that date.

It is apparent in this case that the board approved a settlement which, in retrospect, the ALJ and the board itself are now convinced was 49.5% lower than what the facts entitled claimant to receive. The board agreed factually that the ALJ did not err in his determination that claimant, Wells, was, in fact, totally disabled at the time he entered into the settlement and at the time the board *approved* the settlement. Because there is substantial evidence to support the ALJ's determination that Wells suffered a 100% occupational disability on November 28, 1988, and because, to the contrary, the evidence is not so overwhelming as to *compel* a finding that the ALJ erred in that factual conclusion, we cannot reverse such finding. Furthermore, such finding was not contested by Wells who relied upon the rationale of *Parson, supra,* in contending the ALJ erred as a matter of law.

Needless to say, it is disturbing that the original settlement was "approved" when it was so obviously disproportionate to the actual percentage of disability suffered by Wells.

It is in the proceeding now before us that we must deliver Wells a rather harsh blow. So it may be legitimately asked, "Why was the original settlement approved, at that time by the board, when it is agreed among all that he was in fact 100% disabled?"

■ One answer is that approval of a settlement, now by the ALJ, is required so the award can be enforced by the circuit court pursuant to KRS 342.305. Under this argument, approval is only a step in the process of "rubber stamping" the settlement, purely a ministerial exercise.

However, KRS 342.265 appears to demand more than a rubber stamp process. It provides:

If the employee and employer ... reach an agreement ..., a memorandum of the agreement shall be filed with the administrative law judge, and, *if approved by him,* shall be enforceable as provided by KRS 342.305. (Emphasis added).

It is our conclusion that there would be no need for KRS 342.265 if approval of settlements by the ALJ is simply a mindless task of affixing a signature to a piece of paper. KRS 342.305 suffices if approval was intended to be a pure ministerial function.

*Skaggs v. Wood Mosaic Corporation,* Ky., 428 S.W.2d 617, 619 (1968), gives some insight to KRS 342.265 by stating:

The plain purpose of the statute is that the board [now the ALJ] be given the opportunity to pass upon the terms of compensation settlements, and thus protect the interests of the workmen. It would frustrate the purpose of the statute if the court were to place a narrow interpretation upon the word "agreement."

We are of the opinion that the ALJ through KRS 342.265 is empowered to protect the interest of the worker. The ALJ may look behind the settlement when an agreement appears not to be in the interest of the worker, provided there is cause to do so.

The memorandum/agreement approved herein gave very little substantive facts other than Wells suffered fractures of the arms with an agreed settlement of 50.5% permanent partial disability. The memorandum triggered no alert to the approving authority that a more substantial claim lurked in the background. So while the ALJ is empowered to look behind the agreement, it is not necessary, and in fact impractical, to do so in every case because of the sheer volume of claims.

For all the foregoing reasons, we reluctantly reverse the board's decision and order the ALJ's Opinion, Award and Order of February 21, 1992, to be reinstated.

All concur.