Jerry Lynn BAKER; Willie Boggs; Clarence Maggard; Denzil Howard; Corbett Caldwell; Billy R. Cornett; Allen R. Adams; Mitchell Dean Asher; Owen Osborne; Leland Hoskins; Rufus Baker; Dean Adams; Deborah Combs, widow of John Henry Combs; Pearl Baker; Archiles Craft; Ed Morgan; Hobert Morgan; Earl W. Collett; Plaintiffs—Appellees,

Robert L. Whittaker, Director of Special Fund, Intervenor Plaintiff—Appellee,

v.

MINNESOTA MINING AND MANUFACTURING COMPANY, INC.; Mine Safety Appliances; American Optical Corporation; Flexo Products, Inc. Defendants—Appellants.

Nos. 02–5385, 02–5415, 02–5455.

United States Court of Appeals, Sixth Circuit.

May 27, 2004.

Kenneth A. Buckle, Law Office of Kenneth A. Buckle, Hyden, KY, Alva A. Hollon, Jr., Sams & Hollon, Jacksonville, FL, for Plaintiffs–Appellees.

Joel D. Zakem, Labor Cabinet, David W. Barr, Commonwealth of Kentucky, Frankfort, KY, for Intervenor–Appellee.

Jason P. Thomas, Stites & Harbison, Frankfort, KY, Robert M. Connolly, Julie M. McDonnell, Carol Dan Browning, Stites & Harbison, Robert E. Stopher, Robert D. Bobrow, Boehl, Stopher & Graves, William P. Swain, John B. Moore, Milton T. Spurlock, Phillips, Parker, Oberson & Moore, Byron N. Miller, Thompson, Miller & Simpson, Louisville, KY, Bobby R. King, Bayard J. Collier, Boehl, Stopher & Graves, Prestonburg, KY, W. Wayne Drinkwater, Jr., Bradley, Arant, Rose & White, Jackson, MS, for Defendants–Appellants.

Before ROGERS and COOK, Circuit Judges; and COHN, District Judge.[*]

COOK, Circuit Judge.

Plaintiffs brought this products liability action in Kentucky state court against the manufacturers of allegedly defective respiratory masks. After defendants removed the action to federal court on the basis of diversity jurisdiction, the district court granted the motion to intervene of the Kentucky Special Fund, a state agency charged with administering health benefits to coal miners who develop pneumoconiosis, a progressive lung disease. Deciding that the Special Fund is an arm of the Commonwealth of Kentucky and that the Special Fund's intervention therefore destroyed diversity jurisdiction, the district court remanded the action to the Kentucky state court. We conclude that the district court correctly found the Special Fund to be an arm of the Commonwealth, but erred in allowing the Special Fund to intervene and in remanding the suit to state court.

I

Plaintiffs, nineteen former coal miners, filed this suit in Kentucky state court, alleging that defendants' respiratory masks failed to protect them from developing pneumoconiosis. The Director of Kentucky's Special Fund moved to intervene as a plaintiff, claiming that the Special Fund has paid, or presently owes, workers' compensation benefits to two plaintiffs, Mitchell Dean Asher and Dean Adams—benefits the Special Fund believes it could recover if Asher and Adams receive damages from defendants.

Before the Kentucky state court ruled on the Special Fund's motion to intervene, defendants removed the suit to federal court on the basis of diversity jurisdiction. Plaintiffs then moved to remand, arguing that diversity jurisdiction did not exist because the Special Fund, as an arm of the Commonwealth of Kentucky, was not a "citizen" of any state and thus the action was not between "citizens of different States." *See* 28 U.S.C. § 1332(a) (providing that diversity jurisdiction exists in civil actions between "citizens of different States"). Defendants opposed the motion to remand. arguing that because the Kentucky court had not ruled on the Special Fund's motion to intervene before removal, the Special Fund was not a party and complete diversity did exist. The district court granted both the Special Fund's motion to intervene and plaintiffs' motion to remand.

Defendants now appeal, presenting three arguments: (1) that the Special Fund is not an arm of the Commonwealth

[*] The Honorable Avern Cohn. United States District Judge for the Eastern District of Michigan, sitting by designation.

of Kentucky and thus its intervention does not defeat diversity jurisdiction; (2) that if the Special Fund is an arm of the Commonwealth, then under 28 U.S.C. § 1367(a), the district court should have denied its motion to intervene; and (3) that plaintiffs do not have standing to raise an Eleventh Amendment immunity defense on behalf of the Special Fund. Plaintiffs counter that (1) the Special Fund had already intervened in the state court because defendants did not object in state court to the Special Fund's motion to intervene; (2) the Special Fund is an indispensable party, and thus if it cannot intervene, the district court must dismiss (or remand) the case; and (3) the Eleventh Amendment bars continuing the suit in federal court with the Special Fund as a party.

## II

### A. Jurisdiction

■ As a preliminary matter. Plaintiffs argue that this court lacks jurisdiction to review the district court's remand order because, according to 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Read in conjunction with § 1447(c), however, this prohibition applies only when a district court remands for lack of subject matter jurisdiction at the time of removal. Because the district court here had subject matter jurisdiction at the time of removal, this court has jurisdiction to review the district court's order allowing the Special Fund to intervene and remanding the action to state court. *See Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 265 (6th Cir. 2003) (noting that under 28 U.S.C. §§ 1447(c) and (d), "[i]f a district court has jurisdiction at the time of removal, but jurisdiction is subsequently destroyed by later events, a remand order is reviewable.").

### B. Standard of Review

We review de novo the district court's ruling granting intervention as a matter of right and remanding for lack of jurisdiction. *See, e.g., Ammex. Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir.2003) ("We review the existence of subject matter jurisdiction de novo."); *United States v. Tennessee*, 260 F.3d 587, 582 (6th Cir.2001) ("A district court's denial of intervention as of right is reviewed de novo, except for the timeliness element, which is reviewed for an abuse of discretion.").

## III

### A. Arm of the State

■ For purposes of diversity jurisdiction under 28 U.S.C. § 1332, a state is not a citizen. *Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894). Political subdivisions of a state, however, unless simply "the arm or alter ego of the state," are citizens of the state for diversity purposes. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Whether a state-created agency is the alter ego of the state depends upon how much autonomy or independence from the state the agency possesses. *See Moor*, 411 U.S. at 717 (finding that county had "a sufficiently independent corporate character" to be a "citizen" of the state of California for diversity purposes); *Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1203 n. 4 (1st Cir.1993) (noting that "the analysis must center on the State-related party's enduring legal identity as a juridical entity separate from the State"). For the following reasons, we uphold the district court's determination that the Special Fund lacks sufficient independence from the Commonwealth of Kentucky to be a "citizen" of

Kentucky for purposes of diversity jurisdiction.

The Kentucky Legislature created the Special Fund to relieve employers of "liability for the proportion of employee disability which is attributable to a pre-existing dormant non-disabling disease or condition." *A & K Coal Co. v. Blankenship*, 708 S.W.2d 638, 639 (Ky.1986). This decreased liability that a subsequent employer faces for an employee's illness caused by conditions of a previous employment—especially previous employment in the coal mines—promotes employment of disabled and potentially disabled workers. *Beale v. Faultless Hardware*, 837 S.W.2d 893, 897 (Ky. 1992). That the Special Fund serves the governmental objective of promoting the employment of disabled workers—private insurance agencies do not exist to increase employment rates—supports the conclusion that the Special Fund is an arm of the Commonwealth. *See Hutsell v. Sayre*, 5 F.3d 996, 999, 1002 (6th Cir. 1993) (discussing governmental function as a factor pointing to alter-ego status); *Hall v. Med. Coll of Ohio*, 742 F.2d 299 (6th Cir.1984) (same).

The Legislature's control over funding for, and benefits provided by, the Special Fund further suggests that the Special Fund is an arm of the Commonwealth. For example, the Legislature provides part of the Special Fund's revenues through an appropriation of coal severance tax proceeds. And the Legislature must approve the rates the Special Fund sets for its other funding source, an assessment imposed on workers' compensation premiums paid to insurance carriers. Furthermore, the Legislature can adjust these rates according to its public policy objectives. In one instance, the Legislature increased the assessment on the coal industry to make that industry's burden proportionate with its liability for coal miners' pneumoconiosis, and to discourage other industries from leaving Kentucky to avoid paying into the Special Fund. *Kentucky Harlan Coal Co. v. Holmes*, 872 S.W.2d 446, 452–53 (Ky.1994). The Legislature also changed the evidentiary criteria for awarding Special Fund benefits, again for the governmental purpose of alleviating the burden on non-coal industries. *Id.*

The one case from the Kentucky courts contemplating the Special Fund's status supports our conclusion. In *Wagoner v. Cansler*, the Supreme Court of Kentucky considered the Special Fund's claim that, because it was an instrumentality of the Commonwealth of Kentucky, sovereign immunity precluded its liability for a statutory penalty. 542 S.W.2d 291, 291 (Ky.1976). Relying on cases in which it had found the Commonwealth liable for similar penalties, the court summarily disagreed. *Id.* In doing so, the Kentucky Supreme Court regarded the Special Fund as an arm of the Commonwealth. *Id.*

Accordingly, the Special Fund's governmental purpose, the Legislature's control of the Special Fund, and the Kentucky Supreme Court's treatment of the Special Fund persuade us that the Special Fund is an arm of the Commonwealth of Kentucky.[1]

### B. 28 U.S.C. § 1367(b)

Section 1367(b) precludes parties from intervening "as plaintiffs under Rule 24 .... when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements

---

1. We note that on this appeal the brief of the Special Fund provided us with no guidance on how this issue should be resolved.

of section 1332." 28 U.S.C. § 1367(b) (supplemental jurisdiction). As an arm of the Commonwealth of Kentucky, the Special Fund is not a "citizen" for diversity purposes, and its intervention would divest the district court of jurisdiction. Thus, under § 1367(b), the district court should have denied the Special Fund's motion to intervene. *See Dev. Fin. Corp. v. Alpha Hous. & Healthcare, Inc.*, 54 F.3d 156, 159 (3d Cir.1995) (recognizing that § 1367(b) deprives a district court of jurisdiction over a non-diverse intervenor as of right); *Krueger v. Cartwright*, 996 F.2d 928 (7th Cir.1993); *see also* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE. § 1917 at 47 (1994 Supp.) (noting that Section 1367(b) "specifically prohibits the exercise of jurisdiction in diversity cases for persons seeking to intervene as plaintiffs under Rule 24"); 3B JAMES WM. MOORE ET AL. MOORE'S FEDERAL PRACTICE ¶ 24.18 (2d ed.1993), at 24–182 (" § 1367(b) makes one change in prior practice by eliminating supplementary jurisdiction over a party who intervenes, even if by right, as a plaintiff in a diversity action if that party does not meet the requirements for diversity jurisdiction").

■ Plaintiffs argue that the Special Fund had already intervened in state court before removal to federal court because defendants did not timely object to the Special Fund's state-court motion to intervene. Rule 24.01 of the Kentucky Rules of Civil Procedure provides that if an opposing party fails to file an objection within ten (10) days, the party seeking to intervene "may ... have an order allowing the intervention without appearing in court for a hearing." This rule does not mean, however, that the Special Fund automatically intervened after ten days; instead, the rule merely means that the Special Fund had become entitled to intervene. But because the state court never ruled on the Special Fund's motion, the Special Fund had not intervened as of the time of removal.

Plaintiffs alternatively argue that by failing to object within ten days to the Special Fund's motion to intervene in state court, defendants waived the right to object to the Special Fund's intervention. But even if defendants did waive the right to object, the district court nevertheless lacked subject matter jurisdiction, according to § 1367(b), to grant the Special Fund's motion to intervene.

### C. Indispensability

■ Plaintiffs contend that if the Special Fund is not allowed to intervene, the case must be dismissed (or remanded) because the Special Fund is an indispensable party. Rule 19 of the Federal Rules of Civil Procedure distinguishes between necessary parties, which "shall be joined if feasible," and indispensable parties, which must be joined for the case to proceed at all. Although the Special Fund might be a necessary party under Rule 19(a), joining the Special Fund is not feasible because joinder would destroy diversity jurisdiction. Instead, the relevant question is whether the action cannot "in equity and good conscience" proceed without the Special Fund, making the Special Fund an indispensable party under Rule 19(b).

As a partial subrogee, the Special Fund is not an indispensable party: it can recover whatever it is owed in a separate action against plaintiffs Asher and Adams, if they prevail in this case. *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 382 & n. 19, 70 S.Ct. 207, 94 L.Ed. 171 (1949) (stating that an insurer that is partially subrogated to the rights of an insured is a necessary, but not indispensable, party); *accord Krueger v. Cartwright*, 996 F.2d 928, 934 (7th Cir.1993). And while plain-

tiffs contend that Kentucky's statute of limitations bars the Special Fund's separate suit against defendants, any action for recovering subrogated funds from Asher and Adams would not accrue until they received such funds; thus, the Special Fund can protect its rights even if not allowed to intervene in this action.

### D. Eleventh Amendment Immunity

■ We need not decide whether plaintiffs have standing to raise an Eleventh Amendment immunity defense on behalf of the Special Fund because the Special Fund waived its Eleventh Amendment immunity by voluntarily intervening in the federal court action. *See Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883).

### IV

Because it is an arm of the Commonwealth of Kentucky, the Special Fund's intervention would destroy diversity jurisdiction. Under 28 U.S.C. § 1367(b), a party cannot intervene under these circumstances. We therefore reverse the district court's order allowing the Special Fund to intervene and remanding this action to state court.

COHN, District Judge, dissenting.

I dissent as to the holding that the Special Fund is an arm or alter ego of the Commonwealth of Kentucky. The Special Fund's status is such that it would not destroy diversity jurisdiction if allowed to intervene in this case. Therefore. I would affirm the district court's order allowing the Special Fund to intervene. Because diversity exists, however. I agree

that the district court's order remanding the case should be reversed.

This court has applied various factors to determine whether an entity is the arm or alter ego of the state for diversity purposes. In *Geeslin v. Merriman,* 527 F.2d 452, 453–56 (6th Cir.1975), this court considered the following factors in determining whether a plaintiff entity was an arm or alter ego of the state: (1) whether the entity is distinct from the state with the power to sue and be sued and (2) whether the money recovered by the entity will be paid to the treasury of the state. In *Hall v. Medical College of Ohio,* 742 F.2d 299, 302 (6th Cir.1984), this court considered nine factors in determining whether a defendant entity was an arm or alter ego of the state for Eleventh Amendment purposes,[2] including whether state law treats the entity as an arm of the state, whether the payment of any judgment will come from the state treasury, whether the entity is performing a governmental or proprietary function, and whether the entity has the power to sue and be sued. This court has also acknowledged, however, that the "most important" factor is whether the state treasury will be liable for any judgment or will receive the benefit of any judgment that the entity receives. *Id.;* see *Brotherton v. Cleveland,* 173 F.3d 552, 560–61 (6th Cir.1999); *Geeslin,* 527 F.2d at 455.

Here, four factors clearly indicate that the Special Fund is a political subdivision rather than an arm or alter ego of the Commonwealth of Kentucky.

First, monies recovered by the Special Fund are not paid to the Kentucky treasury. The Special Fund (now called the Division of Workers' Compensation Funds)

---

**2.** Other courts have applied the Eleventh Amendment alter ego analysis to diversity situations. *See Tradigrain, Inc. v. Mississippi State Port Authority,* 701 F.2d 1131, 1132 (5th Cir.1983) (stating that the two analyses are "virtually identical"). *But see University of Tennessee v. United States Fidelity & Guaranty Co.,* 670 F.Supp. 1379, 1386 (E.D.Tenn.1987).

is an agency created by Kentucky law responsible for the administration and legal representation of the fund and the maintenance of records regarding the payment of claims by the fund. Ky.Rev.Stat. § 342.120(1). The Kentucky Workers' Compensation Funding Commission is a funding arm that controls, invests, and manages the fund. *Id.* § 342.1223(1). It is "attached to the Labor Cabinet for administrative purposes only." *Id.* §§ 342.1223(5), 336.015. The fund receives funding from an assessment imposed on workers' compensation premiums and an appropriation of Kentucky coal severance tax revenues. *Id.* § 342.122(1)(b)-(c).

By statute, the Funding Commission shall "[h]old, administer, invest, and reinvest [the fund] separate and apart from all 'state funds' or 'public funds.'" *Id.* § 342.1223(2)(a). Hence, any judgment in favor of the Special Fund in this case would not be paid into the Kentucky treasury; rather, the monies recovered would be kept separate from Kentucky's General Fund. *See Thompson v. Kentucky Reinsurance Assoc.,* 710 S.W.2d 854, 857 (Ky. 1986) ("the premiums assessed by the [Kentucky Reinsurance Association, the predecessor of the Funding Commission,] against its subscribers are clearly private funds, as opposed to public, and are therefore not subject to control by the General Assembly"); *cf. Bremiller v. Cleveland Psychiatric Inst.,* 879 F.Supp. 782, 786–87 (N.D.Ohio 1995) (holding that a state psychiatric institute was an arm of the state for Eleventh Amendment purposes because money received by the institute was paid directly to, and controlled by, the state treasury). Indeed, loans and transfers from the Funding Commission to the Commonwealth are expressly prohibited. Ky.Rev.Stat. § 342.1227. Because the Kentucky treasury will not be affected by any recovery or lack of recovery by the Special Fund in this case, the Special Fund is a financially independent political subdivision rather than an arm or alter ego of the Commonwealth.

Second, the Special Fund is a distinct legal entity with the power to sue and be sued. While the Funding Commission manages the fund, the Special Fund provides legal representation, maintains records, and oversees the liabilities of the fund. It is created by Kentucky law and attached to the Department of Workplace Standards for administrative purposes. *Id.* §§ 342.120(1), 336.020. If an employee receives benefits from the Special Fund but then recovers from a third party, the Special Fund (not the Kentucky Attorney General) may by civil action recover at least a portion of the amount it originally paid. *Id.* § 342.700(1). The Funding Commission also has the power to sue. *Id.* § 342.1223(3)(a). In this case, the Special Fund sought reimbursement by intervention in plaintiffs' lawsuit. Clearly, it has the capacity to pursue its subrogation claims in court.

Third, the Special Fund engages in proprietary functions not government functions. The Special Fund is designed to encourage the hiring of disabled workers by limiting employer liability and spreading the risk associated with hiring disabled workers. *Beale v. Faultless Hardware,* 837 S.W.2d 893, 897 (Ky.1992); *A & K Coal Co. v. Blankenship,* 708 S.W.2d 638, 639 (Ky.1986). These are certainly governmental objectives in a broad sense, but whether an entity serves broad public goals or purposes is not the relevant question to determine whether it is independent from the state. Certainly every state-created entity will serve some public purpose. Otherwise, the state would not have created it. Instead, the court must examine what the entity is actually doing and determine if that function is a governmental function or a proprietary function.

*See Hall,* 742 F.2d at 305. Here, the Special Fund provides its own legal representation for subrogation claims, manages the monies in the fund, and provides supplemental insurance. See Ky.Rev.Stat. § 342.120(1). When examined individually, the provision of legal services, money management, and insurance are more properly categorized as classic proprietary functions.

Fourth, no Kentucky court has found the Special Fund to be an arm or alter ego of the Commonwealth. In *Wagoner v. Cansler,* 542 S.W.2d 291, 291 (Ky.1976), the Special Fund appealed the grant of workers' compensation benefits to a group of claimants; the appeal was denied. The claimants moved for imposition of a statutory penalty and the Special Fund denied liability arguing that it was an "instrumentality of the Commonwealth of Kentucky" exempt from the penalty provisions due to sovereign immunity. *Id.* The Kentucky Supreme Court held that "[w]ith this argument the trial court did not agree, and neither do we," and ordered the Special Fund to pay the penalty. *Id.* Contrary to the majority's reading of the case, the Kentucky Supreme Court did *not* regard the Special Fund as an arm of the Commonwealth entitled to sovereign immunity. Moreover, the Special Fund has been an intervening plaintiff in numerous federal cases, none of which questioned the court's diversity jurisdiction. *See, e.g., Brock v. Caterpillar, Inc.,* 94 F.3d 220, 222 (6th Cir.1996); *Bowling v. General Motors Corp.,* 70 F.3d 1271, No. 94–6061, 1995 WL 704230, at *1 (6th Cir. Nov. 29, 1995) (unpublished).

Balancing the numerous factors from prior cases, including the connection between the Special Fund and the Kentucky treasury as well as the Special Fund's autonomous power, clearly the Special Fund is a political subdivision not an arm or alter ego of the Commonwealth. Therefore, the district court erred in finding that the Special Fund was not a "citizen" under 28 U.S.C. § 1332. The Special Fund should have been allowed to intervene and the case should continue in the district court with the Special Fund as a party.