RENDERED: NOVEMBER 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0211-WC

TENNCO ENERGY, INC.                                              APPELLANT

|  | PETITION FOR REVIEW OF A DECISION |
|---|---|
| v. | OF THE WORKERS' COMPENSATION BOARD |
|  | ACTION NOS. WC-19-01321, WC-19-01223 & WC-19-01221 |

RICHARD LANE; HONORABLE JONATHAN
R. WEATHERBY, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, MAZE, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: An administrative law judge (ALJ) dismissed a coal

workers' pneumoconiosis (CWP) claim that Richard Lane filed against his former

employer, Tennco Energy, Inc. (Tennco), after determining Lane had failed to give

Tennco adequate notice of his claim pursuant to Kentucky Revised Statutes (KRS)

342.316(2). Upon administrative review, the Workers' Compensation Board (Board) reversed and remanded after concluding the ALJ's determination regarding Lane's notice of his claim was clearly erroneous. Tennco now appeals.

Given that Lane had reached a settlement with a prior employer for his prior CWP claim, he had no duty to provide notice to Tennco until he was re-diagnosed at a higher disease category; before that time Lane did not know if he would have a compensable claim for CWP against Tennco. Therefore, we affirm the Board.

On December 22, 2004, Richard Lane settled a CWP claim he had asserted against a prior employer, Simpson Mining. Their agreement reflected Lane had been occupationally exposed to coal dust for approximately 19 years as of February 1, 2003; and five physicians[1] had assessed his condition at that time as consistent with the following International Labor Organization (ILO) radiographic classification categories for diagnosing pneumoconiosis:[2]

---

[1] The five physicians' first names were omitted from the agreement.

[2] The ILO has standardized classification of lung X-rays for diagnosing pneumoconiosis. These classifications, in turn, are used in categorizing the progress and level of benefits warranted for a given case of CWP. *See generally* KRS 342.732(1)(a)-(b).

| ILO Classification | Date of Report | Physician |
| --- | --- | --- |
| 1/1 | 06/07/2003 | Alexander |
| 0/0 | 12/02/2003 | Jarboe |
| 0/0 | 01/22/2004 | Narra |
| 1/0 | 01/14/2004 | Baker |
| 1/1 | 01/31/2004 | Vuskovich |

Pursuant to KRS 342.732(2), "[t]he presence of respiratory impairment resulting from exposure to coal dust shall be established by using the largest forced vital capacity (FVC) value or the largest forced expiratory volume in one second (FEV1) value determined from the totality of all such spirometric testing performed in compliance with accepted medical standards." The May 7, 2004 FVC/FEV1 pulmonary function studies of Dr. Glen Baker also revealed Lane's respiratory functions were, at that time, 103%/91% of predicted normal values. Due to his settlement, there was no final resolution of Lane's ILO classification. However, Lane received a total lump sum settlement from Simpson Mining consisting of:

- $7,500, for what the agreement stated was "consideration paid as full compensation for any and all disability claims of Plaintiff, including retraining incentive benefits [(RIB)[3]], temporary total disability, permanent partial disability and permanent total disability benefits[.]"

_____

[3] "Under KRS 342.732(1)(a) a worker is entitled to retraining incentive benefits when there is no respiratory impairment and the award may be collected while the employee continues to work in

- $1,000, for "consideration for Plaintiff's waiver of all medical benefits and expenses in connection with this claim[.]"

- $1,000 for "consideration for Plaintiff's waiver of his rights to reopen this claim under KRS 342.125." And,

- $3,000 for "consideration for waiver by Plaintiff of entitlement to any vocation rehabilitation benefits related to this claim."

After resolving his claim against Simpson and ending his employment with that entity, Lane continued working in the coal mining industry for several other employers for several more years. During that time, he was continuously exposed to coal dust and thus the hazards of CWP. On July 11, 2019, Lane's attorney sent a letter to Tennco – in whose employ Lane had been last exposed – advising Lane would be filing a claim for CWP sustained while working in Tennco's coal mines.[4] As provided by KRS 342.316(1)(a), "[t]he employer liable for compensation for occupational disease shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease."

On October 29, 2019, Lane filed a workers' compensation claim to that effect against Tennco. In conjunction with the filing of his claim, Lane produced his work history, indicating his tenure with Tennco began in October

the mining industry. In other words, [an] RIB award is not based upon an incapacity to perform work[.]" *Newberg v. Slone*, 846 S.W.2d 694, 698 (Ky. 1992).

[4] Lane filed other claims against Tennco relating to other asserted work-related injuries. Those other claims are not at issue in this appeal and will not be discussed.

2009 and had ended on January 21, 2019. He produced the July 11, 2019 letter from his attorney advising Tennco of his intention of filing a CWP claim against it. He produced pulmonary function tests (PFT) report of Dr. Aqeel Mandiwala, setting forth his findings concerning Lane's FVC/FEV1. Lane also filed a "B" reading interpretation of Dr. Kathleen DePonte, a board-certified radiologist and NIOSH-certified B Reader, performed on September 11, 2019. There, Dr. DePonte read X-rays of Lane, taken August 7, 2019, as revealing an ILO radiographic classification category of 3/2. She opined as follows: "Classic diagnostic findings of severe simple and mild complicated coal workers' pneumoconiosis. CT may reveal other large opacities obscured by the high profusion."

Lane later testified regarding his CWP claim during a November 19, 2019 deposition, and at a July 30, 2020 hearing. At the time of his deposition, Lane was 53 years of age, a high school graduate, and had last been employed by Tennco as a shuttle car operator in an underground coal mine. At the time he quit, Lane had worked from 3:00 a.m. to 3:00 p.m. six days a week earning $21.00 an hour, and he worked approximately 70 hours per week. Lane testified that except for the period from 2003 to 2005, when he hauled mail from London to Lexington twice a day, he continuously worked in the coal mining industry from 1984 through January 21, 2019. As of January 21, 2019, Lane possessed an

underground mining certificate, foreman's papers, and a Medical Emergency Technician (MET) designation.  He ceased working because of a mine fatality.

Relative to Lane's subsequent CWP claim against Tennco, four physicians assessed his condition at that time as consistent with the following ILO radiographic classification categories:

| ILO Classification | Date of Report | Physician |
|---|---|---|
| 3/2 | 09/11/2019 | Kathleen DePonte |
| 2/3 | 12/05/2019 | B.T. Westerfield |
| 2/2 | 05/12/2020 | Thomas Jarboe |
| 2/3 | 06/21/2020 | William Kendall |

As for Lane's FVC/FEV1 pulmonary function studies, the June 5, 2019 PFT report of Dr. Aqeel Mandiwala, which assessed the results of Lane's testing on May 30, 2019, stated Lane's spirometry was "normal."

In sum, the evidence of record indicated that Lane's CWP had *progressed* to a higher disease category since 2004.  Specifically, on January 31, 2004 – when Lane was last diagnosed with CWP, and at its highest level – Dr. Vuskovich had categorized Lane's condition as 1/1; and Dr. Baker had indicated Lane's respiratory functions were normal.  Conversely, following Lane's last date of hazardous exposure in 2019, Dr. Mandiwala had indicated Lane's respiratory

functions remained "normal"; but Lane was diagnosed with CWP *at least* as advanced as 2/2 by Dr. Jarboe.

With that said, the issue presented in this matter concerns *when* Lane was required to notify Tennco of his CWP claim. As it did below, Tennco argues Lane was obligated as of January 21, 2019 – his last date of employment – to notify it of his "diagnosis" of CWP. Tennco further contends that July 11, 2019 – when Lane ultimately notified it that he would be filing a CWP claim – was too late. Upon considering this issue, the ALJ agreed with Tennco and dismissed Lane's claim as untimely within the meaning of the "notice" requirement of KRS 342.316(2). The Board reversed the ALJ, explaining that a finding of timely notice was compelled by the evidence. Tennco now argues the Board erred in doing so.

We disagree. We begin with the operative statute, KRS 342.316(2), which provides in relevant part:

> [N]otice of claim shall be given to the employer as soon as practicable after the employee first experiences a distinct manifestation of an occupational disease in the form of symptoms reasonably sufficient to apprise him that he has contracted the disease, or a diagnosis of the disease is first communicated to him, whichever shall first occur.

In *Newberg*, 846 S.W.2d at 695, the Kentucky Supreme Court interpreted the KRS 342.316(2) notice requirement, stating it "requires notice to an employer when the worker has knowledge of a *potentially compensable*

*condition*." (Emphasis added.) The Court has further held that "the requirement to give notice as soon as practicable means within a reasonable time under the circumstances of each particular case." *Peabody Coal Co. v. Harp*, 351 S.W.2d 170, 172 (Ky. 1961).

Accordingly, the dispositive question is when Lane should have known his CWP condition was potentially compensable as it relates to Tennco. In general, Lane's condition could only be considered potentially compensable relative to Tennco if two prerequisites were satisfied. First, in the interim between the conclusion of his first claim of CWP and the filing of his subsequent CWP claim against Tennco, Lane was required to be employed in the Commonwealth, and continuously exposed to the hazards of the disease, for at least two years. KRS 342.316(12). Undisputedly, this prerequisite was satisfied.

Second, as in the case of any other injury or occupational disease claim, Lane was required to demonstrate that he suffered a *harmful change*. KRS 342.0011(2) defines an occupational disease as "a disease arising out of and in the course of the employment." Such a disease:

> [S]hall be deemed to arise out of the employment if there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident to the work as a result of the exposure occasioned by the nature of the employment

and which can be fairly traced to the employment as the proximate cause.

KRS 342.0011(3). Further, an occupational disease falls generally within the KRS 342.0011(1) definition of an injury, which includes: "any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings."

With that said, not all CWP claims are the same – and a prior "diagnosis" of CWP is not dispositive – because there are different *types* of CWP diagnoses. CWP is not considered a static and *per se* totally disabling disease, but rather a progressive one that encompasses several differently compensable categories of harm:

> Prior to 1987, black lung benefits tended to be awarded on an all-or-nothing basis, based upon little more than a diagnosis and the worker's testimony that he had trouble breathing and could no longer perform his previous work. Medical evidence of the extent of the disease or of the affected worker's functional impairment played little, if any, role in the process. There was no uniformity in the type of medical evidence which was introduced from one claim to the next.
>
> In 1987, the legislature enacted KRS 342.732 and amended KRS 342.316 in an attempt to provide more objective standards with regard to both the requisite medical evidence and the level of benefits to be awarded for varying degrees of coal workers' pneumoconiosis. Those standards were based upon the medical realities of the disease. They took into account the category of

disease from which the worker suffered, as visible on x-ray, and the extent of the worker's pulmonary impairment due to the inhalation of coal dust, as demonstrated by spirometry. *See Kentucky Harlan Coal Co. v. Holmes*, Ky., 872 S.W.2d 446 (1994). As a result, workers with the same disease category and/or pulmonary impairment, as demonstrated by the same type of medical evidence, were entitled to receive the same level of benefits pursuant to KRS 342.732. Income benefits were awarded only to those workers who proved: 1.) that they suffered from a significant impairment in pulmonary function due to the inhalation of coal dust as established under the standards set forth in the AMA Guides to the Evaluation of Permanent Impairment (Guides) or 2.) that they suffered from an advanced category of the disease.

*Gibbs v. Premier Scale Company/Indiana Scale Co.*, 50 S.W.3d 754, 760 (Ky. 2001).

An individual who has asserted a prior CWP claim may nevertheless have a subsequent *compensable condition* of CWP – and thus have a subsequent claim – if, following at least two more years of occupational exposure, they can demonstrate their CWP has *progressed*. That much is obvious from a plain reading of KRS 342.125(5)(a), which addresses the circumstance in which a worker seeks to reopen a prior CWP award against its current employer. It provides:

Upon the application of the affected employee, and a showing of progression of his previously-diagnosed occupational pneumoconiosis resulting from exposure to coal dust and development of respiratory impairment due to that pneumoconiosis and two (2) additional years of

-10-

employment in the Commonwealth wherein the employee was continuously exposed to the hazards of the disease, the administrative law judge may review an award or order for benefits attributable to coal-related pneumoconiosis under KRS 342.732. An application for review under this subsection shall be made within one (1) year of the date the employee knew or reasonably should have known that a progression of his disease and development or progression of respiratory impairment have occurred. Review under this subsection shall include a review of all evidence admitted in all prior proceedings.

*Id.* The same holds true where, as here, a worker who secured an award based upon CWP against a prior employer later asserts a new CWP claim against a different employer.[5]

Regarding the timeliness of Lane's notice, the holding in *Blackburn v. Lost Creek Mining*, 31 S.W.3d 921 (Ky. 2000), is dispositive. In *Blackburn*, a miner filed a claim for CWP benefits. Although two doctors found he was positive for the disease, two other doctors claimed he was negative; the ALJ adopted the findings that the miner was negative; and his claim was consequently dismissed. Several years later, the miner again applied for benefits for CWP but from a different employer. The new employer, Lost Creek, denied his claim and asserted

---

[5] This is consistent with *Mann v. Rockhouse Energy Mining Company/Sidney Coal*, No. 2007-SC-000276-WC, 2008 WL 746599 at *2 (Ky. Mar. 20, 2008) (unpublished), in which the Kentucky Supreme Court explained that a worker who had previously secured an award based upon category 1 CWP against a different employer "bound him in the present claim to show that his exposure while working for the defendant-employer caused a subsequent harmful change in the human organism, *i.e.*, *a higher disease category or respiratory impairment*." (Emphasis added.) We do not cite *Mann* as persuasive authority.

-11-

that the miner was required to give them notice "of his previous diagnosis and his potential claim as soon as practicable after he ceased his employment with Lost Creek in August, 1995." *Id*. at 924-25. The Kentucky Supreme Court disagreed, stating "[t]he claimant became employed by Lost Creek after the [initial] decision and did not obtain a second diagnosis of category 1/0 disease . . . until after the employment with Lost Creek ceased; whereupon, he attempted to notify Lost Creek." *Id*. at 925. The Court held that the miner had given Lost Creek notice "as soon as practicable" in accordance with KRS 342.316(2).

The same analysis applies in the instant case. Although Lane had previously been diagnosed with CWP, he was under no duty to notify Tennco until September 11, 2019, when he obtained his later diagnosis from Dr. DePonte. At that point, Lane had a "compensable injury" that could be attributed to his employment with Tennco. Notifying Tennco of his prior diagnosis of CWP would have been fruitless until he was "re-diagnosed" by Dr. DePonte at a higher disease category. Considering that Lane *settled* his prior CWP claim with Simpson Mining, the issue of his disease category as of February 1, 2003, would, of course, be subject to re-litigation. *See, e.g.*, *Beale v. Faultless Hardware*, 837 S.W.2d 893, 896 (Ky. 1992); *American Standard, Inc. v. Stephen*, 565 S.W.2d 158, 161 (Ky.App. 1978); KRS 342.125(7). Again, however, the evidence only indicates that Lane's condition of CWP was *at most* within a 1/1 disease category at that

-12-

time – a lower disease category than what Dr. DePonte assessed on September 11, 2019.

Thus, given his prior settlement, Lane did not have any further compensable injury for which he could have claimed benefits from Tennco until Lane was diagnosed with disease progression. While Lane had suspicions that his disease condition had changed over the course of his employment with Tennco, his suspicions did not require notification without confirmation that Lane's subjective perceptions of his condition (which could possibly be the result of his existing disease) had objectively worsened. Accordingly, the ALJ's findings regarding this issue were clearly erroneous. Because the Board is charged with deciding "whether the evidence is sufficient to support a particular finding made by the ALJ," *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992), we believe the decision to reverse was clearly within the Board's province.

Lane actually notified Tennco four months *before* receiving his re-diagnosis from Dr. DePonte. *See American Printing House for the Blind v. Brown*, 142 S.W.3d 145, 149 (Ky. 2004) ("nothing prohibits a worker who thinks she has sustained a work-related gradual injury from reporting it to her employer before the law requires her to do so, and nothing prevents her from reporting an injury that she thinks is work-related before a physician confirms her suspicion"). Tennco points to nothing of record indicating Lane should have known his CWP

-13-

had progressed prior to that point.  As noted, Dr. Mandiwala indicated Lane's

respiratory functions remained "normal" as of May 30, 2019; and Lane's

unrebutted testimony was that he only quit working for Tennco due to a mining

incident that involved a fatality.  Therefore, we affirm the Board's holding.

ALL CONCUR.


BRIEF FOR APPELLANT:

W. Barry Lewis
Hazard, Kentucky

BRIEF FOR APPELLEE:

John Morgan
Richard Couch
Harlan, Kentucky