NELSON STEEL CORPORATION,
Appellant,

v.

Dale McDANIEL, Appellee.

No. 94–SC–291–DG.

Supreme Court of Kentucky.

March 23, 1995.

Rehearing Denied June 8, 1995.

Deno C. Capello, Jr., Weinberg & Capello, Lexington, for appellant.

John W. Morgan, Theresa Gilbert, Denney, Morgan & Rather, Lexington, for appellee.

LEIBSON, Justice.

Appellee, Dale McDaniel, filed suit in Fayette Circuit Court against Nelson Steel Corporation, alleging his employment with Nelson Steel was wrongfully terminated because he had filed workers' compensation claims "while under the employment of a *previous* employer." Emphasis added. McDaniel had pursued two previous, legitimate claims for compensable injuries before going to work for Nelson Steel Corporation.

Nelson Steel Corporation moved for summary judgment contesting the reason for discharge, claiming that McDaniel "was an at-will employee ... laid off from his employment at Nelson Steel as a result of a reduction in work load and work availability for employees," and further stating as a "second reason ... that Kentucky case law is silent regarding causes of action for discharge of employees because they have filed workers' compensation claims against former employers."

The employee, by affidavit, has presented persuasive evidence that the reason he was terminated at the time when his employer decided to lay off workers was because of his previous workers' compensation claims record: his present employer believed these previous claims would adversely affect Nelson Steel's workers' compensation insurance rates. The employee's evidence included a letter from his shop supervisor which was enclosed with his last paycheck substantiating this as the reason for his layoff, and adding: "I truly regret this since I felt you were one of the most qualified, energetic people working on the erection crew but economics doesn't permit us to retain you at this time." [1]

At oral argument on cross motions for summary judgment, the trial court left unresolved whether McDaniel was entitled to summary judgment based on his evidence proving he was discharged because he had filed previous claims against a former employer. Instead, the trial judge focused on what he described as the "legal issue." The trial judge stated the "legal issue" was whether the legislative policy represented by the Workers' Compensation Act, and in particular by KRS 342.197(1), constitutes grounds to support a wrongful discharge claim in present circumstances. The trial court concluded the provisions of the act did not cover the present situation, overruled the employee's motion for summary judgment, and sustained the employer's motion for summary judgment. The employee appealed the summary judgment.

Since the employee presented strong evidence that the reason for discharge was be-cause of his previous workers' compensation claims against a former, different employer, which might affect the present employer's insurance rates, the only possible reason for sustaining the summary judgment would be that this evidence did not present any genuine issue of material fact. See *Steelvest, Inc. v. Scansteel Service Ctr.*, Ky., 807 S.W.2d 476 (1991) and *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985).

The Court of Appeals recognized that the real issue in the case was not whether McDaniel was terminated as a result of his prior workers' compensation claims, but "whether the retaliatory discharge exception to the terminable-at-will doctrine encompasses compensation claims filed against prior employers." The Court of Appeals concluded, "[w]e cannot agree [with the trial court] that the protection KRS 342.197 affords injured workers is limited to claims against the current employer." The Court of Appeals reversed the judgment, remanding for further proceedings.

■ The employer, Nelson Steel Corporation, moved this Court for further review, which we have granted. The employee filed no cross-motion for discretionary review to preserve the question whether he was entitled to a summary judgment because the evidence that he was fired for having filed workers' compensation claims in the past is essentially unrefuted, although he argues this in his brief. The failure to file a cross-motion for discretionary review, as provided for in CR 76.21, would foreclose further consideration of this aspect of the Court of Appeals' decision if we were inclined to agree that a wrongful discharge claim can be asserted in present circumstances. However, this becomes moot because, for reasons to be stated, we have concluded the employee's evidence does not support a claim for wrongful discharge, and the trial court's summary judgment should have been affirmed.

KRS 342.197 provides in pertinent part:

(1) No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for fil-

___

1. This is an edited version of the supervisor's handwritten note, correcting spelling errors.

ing and pursuing a lawful claim under this chapter.

. . . .

(3) Any individual injured by any act in violation of the provisions of subsection (1) or (2) of this section shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained by him, together with the costs of the law suit, including a reasonable fee for his attorney of record.

■ The narrow issue before us is to decide whether the phrase "for filing and pursuing a lawful claim under this chapter" (KRS 342.197(1), *supra*, extends to legitimate claims against previous employers which the present employer perceives as constituting an economic risk in the form of higher premiums for its workers' compensation insurance coverage. As the Court of Appeals states, no Kentucky case specifically addresses the prior employer question. Nevertheless, we interpret the seminal case on this subject, *Firestone Textile Co. Div. v. Meadows*, Ky., 666 S.W.2d 730 (1983), as both establishing the basis for an employee to seek damages for wrongful discharge because he was fired for filing or pursuing a workers' compensation claim, and also as setting the limitations on claims of this nature, and we do not view the *Firestone* case as accommodating a cause of action in present circumstances. This is because the gravamen of the holding in *Firestone* was to recognize the employee "has a cause of action for retaliatory discharge when the discharge is motivated by the desire to punish the employee for seeking the benefits to which he is entitled by law" (*Id.* at 734), whereas discharge here was not retaliatory in nature but for economic reasons, albeit such reasons had their basis in saving on the cost of workers' compensation insurance premiums.

The *Firestone Textile Co. Div. v. Meadows* exception to Kentucky's long-standing "terminable at-will" doctrine in workers' compensation cases is limited by the language of the case. In *Firestone* we found the situation analogous to *Pari–Mutuel Clerks' Union v. Ky. Jockey Club*, Ky., 551 S.W.2d 801 (1977), wherein our Court had recognized a cause of action for wrongful discharge for an employ-ee who alleged he was discharged in violation of KRS 336.130(1) because he authorized a labor union to represent him for purposes of collective bargaining. In *Firestone Textile Co. Div. v. Meadows,* as in the *Pari–Mutuel Clerks' Union* case, the discharge was retaliatory in nature.

The appellee has cited *Overnite Transp. Co. v. Gaddis,* Ky.App., 793 S.W.2d 129 (1990), a case involving an employee who was discharged before filing a formal claim. In *Overnite Transp. Co.,* the Court of Appeals construed KRS 342.197 as follows:

> Although the legislature used the connective word "and" in according protection for those persons "filing and pursuing a lawful claim," we think there is reasonable justification to regard "and" as "or" in KRS 342.197 in order to accomplish its purpose. This has the effect of placing employees who have filed *or* are pursuing a lawful claim for workers' compensation benefits within the protective ambit of the anti-retaliation provision. *Id.* at 132.

But *Overnite Transp. Co.* is consistent with *Firestone Textile Co. Div.* because both involved allegations the employer discharged its employee *in retaliation* for making a claim. *Overnite Transp. Co.* may be regarded as an essentially reasonable statutory construction of KRS 342.197, but not as authority for extending the principle of retaliatory discharge to present circumstances.

In *Firestone,* we cited to *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983) as persuasive for the legal premise that "a narrow public policy exception should be adopted" to the general rule that in an employment at-will situation the employee may quit, or the employer may discharge, "for good cause, for no cause, or for a cause that some might view as morally indefensible." 666 S.W.2d at 731. The "narrow public policy exception" is stated in *Brockmeyer* as limited to those situations where "the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law. . . . The public policy must be evidenced by a constitutional or statutory provision." 335 N.W.2d at 840.

In *Grzyb v. Evans,* Ky., 700 S.W.2d 399 (1985), rejecting an employee's wrongful discharge claim based on allegations he was discharged "because he had fraternized with a female hospital employee" in violation of his constitutionally protected right to "freedom of association," we further explained:

We adopt, as an appropriate caveat to our decision in *Firestone Textile Co. Div. v. Meadows, supra,* the position of the Michigan Supreme Court in *Suchodolski v. Michigan Consolidated Gas Co.* 412 Mich. 692, 316 N.W.2d 710 (1982). The Michigan court held that only two situations exist where "grounds for discharging an employee are so contrary to public policy as to be actionable" absent "explicit legislative statements prohibiting the discharge." 316 N.W.2d at 711. First, "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." Second, "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." 316 N.W.2d at 711–12.

700 S.W.2d at 402.

■ *Grzyb v. Evans* specified a clear intent on the part of this Court to limit employees' claims for wrongful discharge to those situations where the evidence established the employer was retaliating against the employee for exercising a right conferred by well-established legislative enactment or for refusing to violate the constitution or a statute. As we stated in *Grzyb:*

The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact. *Id.* at 401.

Here the evidence relied upon by the employee fails to meet the criteria.

■ Of course, we recognize that the regulatory power of the state empowers the General Assembly to place statutory limitations on the employer/employee terminable at-will relationship when necessary consistent with a public purpose. But the power to legislatively prohibit employers from discharging employees because they have had previous claims against other, different employers, when the motive is economic rather than retaliatory, is not the issue. The question presented here is *not* whether a statute of this nature is advisable, but whether it exists: does KRS 342.197(1), or some other provision of the Workers' Compensation Act as presently constituted provide a statutory basis for a wrongful discharge claim? Nothing stated in KRS 342.197(1) specifies such legislative policy, nor are we cited to any other provisions in the workers' compensation laws evidencing a "well-defined public policy" in this respect. *Firestone Textile Co. Div. v. Meadows, supra,* 666 S.W.2d at 731.

■ We note that KRS 342.197(1) was enacted March 16, 1984, effective July 13, 1984. Kentucky Acts, 1984, Ch. 96, Sec. 1. The decision in *Firestone* was published November 23, 1983 (reh. den. 4/19/94). If the legislative purpose was to expand upon the cause of action as stated in the text of the *Firestone* opinion, we assume the General Assembly would have so specified in language explicitly stating the broader coverage it intended to provide. Presumably the General Assembly was aware of the *Firestone* case and enacted the statute in language intended to codify the decision, not to expand it. Thus we conclude KRS 342.197(1) does not expand the cause of action for wrongful discharge for exercise of workers' compensation rights beyond the retaliatory discharge situation.

■ We are reenforced in this conclusion by further amendments of KRS 342.197 enacted in 1987. In 1987 subsection (2) was added to KRS 342.197 expanding its reach to declare it "unlawful practice for an employer," *inter alia,* "[t]o fail or refuse to hire, or to discharge any individual, . . . because such individual has been diagnosed as having . . . occupational pneumoconiosis," or "[t]o limit, segregate, or classify his employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect his status as an employee, because such individual has . . . occupational pneumoconiosis." Obviously with reference to "occupational pneumoconiosis" employees have an expanded basis for wrongful discharge claims which does not exist in present circumstances. Such mat-

ters are for legislative determination, and are not proper subjects for judicial policymaking.

Finally, we take note that both the Court of Appeals' decision and McDaniel's brief cite us to cases from other jurisdictions, in particular Michigan and Illinois, which have expanded the concept of a legal action for wrongful discharge to include claims against previous, different employers as well as discharges in retaliation for a claim against the present employer. Arguably, the statutory basis underlying the decision of the courts in these cases from sister states is decidedly different. In any event, these cases are not persuasive given our own case law and statutory background.

Thus we conclude that the decision of the Court of Appeals must be reversed. We reinstate the judgment of the trial court.

STEPHENS, C.J., LAMBERT and REYNOLDS, JJ., concur.

STUMBO, J., dissents by separate opinion in which SPAIN and WINTERSHEIMER, JJ., join.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. The employee, McDaniel, submitted as evidence in support of his summary judgment motion a letter from his supervisor that read as follows:

26 Dec 91

Red,

As you have probably heard our workers [sic] compension [sic] insurance rates tripled last month. Since you have two previous injuries to your knee and two claims we will be unable to employ you in the future. I truley [sic] regret this since I felt you were one of the most qualitified [sic] entergittic [sic] people working on the erection crew but ecnomics [sic] doesn't permit us to retain you at this time. Please feel free to call on me if there is anything I can do to help.

Larry

KRS 342.197(1) states that "[n]o employee shall be harassed, coerced, *discharged, or discriminated against* in any manner what-

soever for filing and pursuing a lawful claim under this chapter." (Emphasis added.)

The language of this statute is clear and unambiguous. Courts are required to give the words of a statute their plain meaning. *Bailey v. Reeves,* Ky., 662 S.W.2d 832, 834 (1984). To read this statute to require that the "lawful claim" referred to be pursued against the discharging employer is to add "restrictive language ... where it does not now exist." *Id.* at 834.

As the majority notes, KRS 342.197 was enacted within months of the rendition of *Firestone Textile Co. Div. v. Meadows,* Ky., 666 S.W.2d 730 (1983). Therein, this Court recognized that implicit in the Workers' Compensation Act was "a public policy that an employee has a right to be free to assert a lawful claim for benefits without suffering retaliatory discharge." *Id.* at 732. More recently, in *Beale v. Faultless Hardware,* Ky., 837 S.W.2d 893, 897 (1992), we recognized the policy objectives that lay behind the creation of the Special Fund:

First, they are designed to encourage the hiring and retention of disabled workers with either latent or obvious disabilities. Second, these funds spread the risk associated with hiring and retaining disabled workers because the last employer should not be asked to bear the total burden when a disability arises only "in part" from the last employment.

In failing to limit the language of KRS 342.197(1) to claims against the current employer, I believe the legislature recognized the meeting of these two policy considerations. Just as the creation of the Special Fund encourages the hiring and retention of previously injured workers, KRS 342.197(1) prohibits their discharge because of prior injuries. I would affirm the Court of Appeals and remand to the trial court.

SPAIN and WINTERSHEIMER, JJ., join this dissenting opinion.