No. 89,560

WILLIAM GONZALEZ-CENTENO, *Appellant/Cross-appellee*, v. NORTH CENTRAL KANSAS REGIONAL JUVENILE DETENTION FACILITY, *Appellee/Cross-appellant*.

(101 P.3d 1170)

Opinion filed
December 3, 2004.

*David O. Alegria*, of McCullough, Wareheim & LaBunker, P.A., of Topeka, argued the cause and was on the briefs for appellant/cross-appellee.

*C. Richard Comfort*, of Ryan & Condray, LLC, of Concordia, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This workers compensation discharge case presents a matter of first impression for the court. A cause of action for retaliatory discharge for exercising rights under the Kansas Workers Compensation Act is well established where the defendant is an employer against which a workers compensation claim has or may be made. William Gonzalez-Centeno, who worked two jobs, filed a workers compensation claim against one employer and sued the other for retaliatory discharge.

There are two issues before this court. The first is whether Gonzalez has a cause of action for retaliatory discharge against the North Central Kansas Regional Juvenile Detention Facility (NCKRJDF), which was not the employer against which his workers compensation claim was asserted. The district court ruled that an injured employee's protection from retaliation is not limited to the employer against which the workers compensation claim was filed. NCKRJDF raises this issue on cross-appeal. The other issue is whether the district court erroneously entered summary judgment in favor of NCKRJDF for lack of evidence supporting Gonzalez' contention that he was fired by NCKRJDF as a result of a work-related injury or making a workers compensation claim against his other employer. Gonzalez raises this issue on appeal.

Gonzalez does not take issue with the findings of fact made by the district court. The following facts are based on the district court's findings.

Gonzalez began employment with two unrelated employers, Venator and NCKRJDF, in August 1996. At the time Gonzalez

began working at NCKRJDF, he was given an employee manual that reserved NCKRJDF's right to preclude employees from working at any other employment. NCKRJDF hired Gonzalez under an oral employment-at-will agreement.

In November 1996, while working for both Venator and NCKRJDF, Gonzalez sustained an accidental injury to his back while working at Venator. He filed for and received workers compensation benefits from Venator from November 29, 1996, through March 16, 1998. In June 1997, during the period when he was receiving workers compensation benefits, Gonzalez was fired by Venator for absences necessitated by his work-related injuries. Venator reinstated him in March 1998, after he made a claim against it for retaliatory discharge.

In December 1997, Gonzalez had surgery for his back injury. In January 1998, he was released to return to work.

On June 24, 1998, Gonzalez aggravated his back injury before reporting for work at NCKRJDF. After working at NCKRJDF for 3 hours that day, Gonzalez had to go home due to the pain. The Director and Assistant Director of NCKRJDF were present when Gonzalez explained why he needed to leave his shift early.

On June 29, 1998, Gonzalez was in pain on account of his back injury. Before 8:00 a.m., he telephoned NCKRJDF and told the administrative secretary that he was unable to work. Gonzalez had been told earlier that he was to talk only to the Director or Assistant Director if he was unable to come in to work. On July 2, 1998, NCKRJDF's Director gave Gonzalez a verbal warning because he had not spoken to the Director or Assistant Director when he telephoned to say that he was unable to work on June 29.

On July 27, 1998, Gonzalez called NCKRJDF at 7 a.m. to say that he was unable to work on account of back pain. He did not speak to the Director or Assistant Director. Gonzalez did not believe that NCKRJDF's Director had the right to require employees to contact him or the Assistant Director directly, and Gonzalez considered the directive to be harassment.

On July 29, 1998, Gonzalez was terminated from NCKRJDF for insubordination because he had not spoken to the Director or Assistant Director when he called in sick.

Law of the case. In a motion for judgment on the pleadings, NCKRJDF raised the question whether Gonzalez has a cause of action for retaliatory discharge against it because it was not the employer against which Gonzalez' workers compensation claim was filed. The trial court overruled the motion. After discovery, NCKRJDF filed a motion for summary judgment. Among other things, NCKRJDF again raised the question whether Gonzalez had a cause of action against it, and the district court reaffirmed its earlier reasoning and conclusion. On appeal, Gonzalez complains that the district court should not have entertained NCKRJDF's second motion for summary judgment because the district court's ruling on the first motion was the law of the case. The district court reaffirmed its earlier ruling, thus eliminating any complaint that the law of the case was disturbed.

Cause of action. Whether to adopt or recognize a cause of action is a question of law over which we have unlimited review. *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 203, 4 P.3d 1149 (2000).

Kansas courts adopted a public policy exception to the employment-at-will doctrine in *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), that afforded protection from discharge for an employee who had filed a workers compensation claim. Since *Murphy* was decided, the workers compensation public policy exception has been extended to include the possibility that a workers compensation claim will be filed, *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, 787 P.2d 1204 (1990); retaliation against the noninjured spouse of an employee who exercised his or her workers compensation rights, *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 840 P.2d 534 (1992); and retaliatory demotion, *Brigham v. Dillon Companies, Inc.*, 262 Kan. 12, 935 P.2d 1054 (1997). The question before this court is whether the exception should be extended to include a cause of action for retaliatory discharge against an employer other than the employer against which a workers compensation claim was or might be asserted.

In this case of first impression, we turn to decisions from other states' courts. Whether a discharge is actionable if the alleged retaliation was on account of a workers compensation claim filed

against a previous employer is an issue that has been answered in the affirmative by the majority of courts that have considered it.

In *Darnell v. Impact Industries, Inc.*, 105 Ill. 2d 158, 473 N.E.2d 935 (1984), the Illinois Supreme Court considered a retaliatory discharge action brought by an employee who was discharged by Impact Industries when it learned that she had filed a workers compensation claim against her previous employer. In recognizing her cause of action, the court majority agreed with the argument "that the evil resulting from the discharge of an employee for having filed a workers' compensation claim against a prior employer is as great as if the discharge had been effected by the prior employer." 105 Ill. 2d at 161. The court continued:

"We perceive no distinction between the situation where an employee is discharged for filing a workers' compensation claim against the defendant employer and one where the employer discharges the employee upon discovering that the employee had filed a claim against another employer. In either situation a retaliatory discharge is equally offensive to the public policy of this State as stated in the Workers' Compensation Act. [Citation omitted.] To hold that the tort of retaliatory discharge requires that the workers' compensation claim be made against the discharging employer would seriously undermine the comprehensive statutory scheme which provides 'for efficient and expeditious remedies for injured employees.' [Citations omitted.]" 105 Ill. 2d at 161-62.

Three justices dissented, expressing the view that continued expansion of the retaliatory discharge cause of action was imprudent. 105 Ill. 2d at 163-66.

In *Nelson Steel Corp. v. McDaniel*, 898 S.W.2d 66 (Ky. 1995), a majority of the Kentucky Supreme Court refused to recognize a wrongful termination action by an employee who was discharged because he had filed workers compensation claims while employed by another employer. The decision was based on a provision of the Kentucky Workers' Compensation Act, which prohibits harassment, discrimination, or discharge of an employee for pursuing a lawful workers compensation claim and creates a civil cause of action for injuries caused by violations of the section. 898 S.W.2d at 67-68. The Kentucky court majority reasoned that the motive for the employer against whom a workers compensation claim was filed to discharge would be retaliatory but the motive for another

employer would be economic, that is, concern that its insurance rates might be affected by the employee's history. The court concluded that the public policy expressed in the statutory provision does not embrace economic discharge. 898 S.W.2d at 68-69. Three justices dissented, expressing the view that the statutory language did not restrict a cause of action to the employer against which a claim has been filed. They also noted that another provision of the same act encourages the hiring and retention of previously injured workers and prohibits their discharge because of prior injuries. 898 S.W.2d at 70.

In *Goins v. Ford Motor Co.*, 131 Mich. App. 185, 347 N.W.2d 184 (1984), the Michigan Court of Appeals held that Goins stated a cognizable claim against Ford, his current employer, for retaliatory discharge because he filed a workers compensation claim against his former employer, General Motors. Subsequent opinions by the Michigan Court of Appeals recognized the cause of action for retaliatory discharge against another employer but disapproved *Goins* on the ground that a retaliatory discharge action sounded in contract rather than tort. In *Phillips v. Butterball Farms*, 448 Mich. 239, 531 N.W.2d 144 (1995), the Michigan Supreme Court agreed with the *Goins* panel and held that an action for retaliatory discharge for filing a workers compensation claim sounds in tort rather than contract because the employer's duty not to retaliate stems from public policy rather than an implied promise by the employer.

In *Taylor v. Cache Creek Nursing Centers*, 891 P.2d 607 (Okla. App. 1994), the Oklahoma Court of Appeals held that state statute, Okla. Stat. tit. 85, § 5 (1993 Supp.), which prohibits an employer from discharging an employee because he or she filed a workers compensation claim covered cases in which the employee's workers compensation claim was filed against a previous employer. The employer that discharged Taylor was the corporation, Cache Creek, that had purchased the nursing home in which Taylor worked. The Oklahoma Court of Appeals concluded that Taylor could maintain an action for retaliatory discharge against the successor business employer. 891 P.2d at 610.

In the unpublished opinion of *Hayes v. Computer Sciences Corp.*, 2003 WL 113457 (Tenn. App.), the Tennessee Court of

Appeals recognized a cause of action for retaliatory discharge by an employee who alleged that he was fired because he had filed a workers compensation claim against a previous employer. Its decision was made in spite of the Tennessee Supreme Court's identifying that "the plaintiff made a claim against the defendant for workers' compensation benefits" was an element necessary to establish a prima facie case for retaliatory discharge. Slip op. at *5. The Court of Appeals also distinguished a whistle-blowing case in which it said that the dismissal must result from actions taken by the employee while employed by the defendant. Slip op. at *5 n.3. The basis for the Court of Appeals' recognition of the cause of action was that it "is clearly supported by both the Workers' Compensation Act and public policy." Slip op. at *4.

In summary, of those courts that have considered the issue, only the Kentucky court refused to recognize a cause of action for retaliatory discharge against an employer other than the one the workers compensation claim was filed against. The Kentucky majority's reasoning, that the motive for termination was economic rather than retaliation, can be seen as elevating the significance of motive and individual conduct over the public good. In recognizing a cause of action for retaliatory discharge in workers compensation cases, the Court of Appeals in *Murphy* stated:

"We believe the public policy argument has merit. The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act." 6 Kan. App. 2d at 495-96.

The above cases are distinguishable from the present case only in that the alleged retaliation was on account of a workers compensation claim filed against a previous employer. We nevertheless find the reasoning of the majority of courts from other jurisdictions that have addressed the issue is persuasive, and we are convinced that reasoning applies as well to the circumstances of the present case. We affirm the district court's ruling recognizing a retaliatory

discharge cause of action against an employer other than the one against which the workers compensation claim was filed.

Entry of summary judgment. In granting summary judgment to NCKRJDF, the district court stated that it found no evidence to support Gonzalez' view that he was fired as a result of a work-related injury or the filing of a workers compensation claim against another employer. We disagree.

On appeal, Gonzalez relies heavily on *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P.2d 645 (1988). In *Coleman*, the court stated: "Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury allows an employer to indirectly fire an employee for filing a workers' compensation claim, a practice contrary to the public policy of this state." 242 Kan. 804, Syl. ¶ 3. Gonzalez contends that it necessarily follows from *Coleman's* prohibiting termination of an employee who fails to call in sick from a work-related injury that termination of an employee who fails to talk to a specific person when calling in sick from a work-related injury is prohibited.

The first question we consider is whether the broad liability language from *Coleman* reflects current law, and the answer is no. With a variety of facts presented and a burden-shifting analysis adopted in subsequent cases, the statement from *Coleman* has been treated not as a rule of law but rather as depending on the peculiar circumstances of each case. Thus, we conclude that whether an employer's discharging an employee for failing to call in an anticipated absence that results from a work-related injury gives rise to liability is a question of fact. Language to the contrary in *Coleman*, 242 Kan. 804, Syl. ¶ 3, is disapproved.

There are significant factual differences between *Coleman* and the present case. Coleman, who had been employed by Safeway for several years, sustained a work-related wrist injury in June 1984. She was treated by the company doctor. In September 1984, she had surgery for the injury, which required her to be absent from work. "During the time she was off work, although she was under the care of the company doctor, her employer assessed infractions against her for failing to call in daily to report her absences." 242

Kan. at 806. When she returned to work, she was terminated due to the number of infractions. Safeway policy provided for termination of an employee who accumulated six attendance infractions. The district court discounted the infractions for work-related absences but granted summary judgment in favor of Safeway on the ground that "Coleman had incurred enough infractions before her surgery to be terminated." 242 Kan. at 806. This court agreed that absences caused by her work-related injury should not be counted against Coleman. In addition, the court considered "Safeway's claim that Coleman was not discharged for absences, but for failing to call in to report absences, is [un]persuasive given the fact that Coleman was being treated by a company physician who provided reports to Safeway regarding Coleman's condition." 242 Kan. at 816.

What this court found fault with in the district court's reasoning was its failure to read the record in the light most favorable to Coleman, the nonmoving party. Even though Coleman came forward with evidence that she had fewer than six infractions before her surgery, thus raising a genuine issue of material fact, the district court found that she had accumulated six attendance infractions before her surgery. Hence, this court determined that the district court erred in granting summary judgment on the disputed factual question regarding the number of accrued infractions.

The circumstances in *Coleman* differ significantly from those of the present case. Coleman injured her wrist while working at Safeway, was under the care of the Safeway doctor, who reported on her condition to Safeway, and she missed work as a result of the surgery. Safeway was fully aware of Coleman's condition, her absences, and the reason for her absences. Safeway's knowledge of Coleman's status made a requirement that she call in daily to report absences entirely superfluous, and, in these circumstances, the court prohibited termination for failing to call in an anticipated absence resulting from a work-related injury.

In contrast, Gonzalez injured his back while working at Venator in November 1996. He had surgery for the injury in December 1997. He filed for and received workers compensation benefits from Venator from November 1996 to March 1998. On June 29, 1998, Gonzalez called NCKRJDF to say that he would be unable

to work due to back pain. A few days later, he was reprimanded for failing to speak directly to the Director or the Assistant Director when he called in sick. On July 27, 1998, Gonzalez again called NCKRJDF to say that he would be unable to work due to back pain and, because he viewed the requirement as harassment, again failed to speak directly to the Director or the Assistant Director. As a result, Gonzalez was fired.

In this case, Gonzalez did not injure his back while working at NCKRJDF and he was not under the care of the NCKRJDF company doctor who would have reported his condition to NCKRJDF. His injury occurred in November 1996, and he underwent surgery in December 1997. He had recovered from the surgery, his workers compensation benefit payments had ceased, and he had returned to work months before the insubordinate incidents of June and July 1998. In these circumstances, NCKRJDF was not fully informed of Gonzalez' condition, his absences were not predictable, and NCKRJDF officers depended on Gonzalez to inform them of his anticipated absences so that a replacement could be secured for Gonzalez' work in the juvenile detention facility. In these circumstances, NCKRJDF's lack of knowledge of Gonzalez' daily status made a call-in requirement necessary rather than superfluous. Thus, the present case is readily distinguishable from *Coleman* on its facts.

It has long been recognized that *Coleman* does not prohibit discharge of an employee who is unable to perform his or her work at the time of discharge, even if the inability to work was due to a work-related injury. *Rowland v. Val-Agri, Inc.*, 13 Kan. App. 2d 149, Syl. ¶ 4, 766 P.2d 819 (1988). In an opinion where *Coleman* was cited for another proposition, the Court of Appeals factually distinguished the circumstances of Coleman's discharge from those of Rowland. See 13 Kan. App. 2d at 153-54. Rowland was injured at work in October 1984 and given a medical release for "light duty" in March 1985. Because his employer had no light duty available, he did not return to work. In May 1985, he was terminated in accordance with company policy to terminate employees who have taken 6 consecutive months' leave. Rowland sued for wrongful

termination. The entry of summary judgment against him was affirmed on the following ground:

"When a discharged employee is not capable of performing the duties of his or her job because of a work-related injury and the termination of that employee's workers' compensation claim is not a condition of his or her reemployment, but another position cannot be found which the employee can fill, the employee does not have a tort action for retaliatory discharge against his or her former employer." 13 Kan. App. 2d 149, Syl. ¶ 4.

Thus, because Rowland was unable to perform his employer's work, the employer's attendance policy provided a sound basis for termination.

*Burden-shifting analysis.* Since *Coleman* was decided, Kansas appellate courts have adopted the burden-shifting analysis of discrimination and free speech cases for use in workers compensation discharge cases. *Rebarchek v. Farmers Co-op Elevator & Mercantile Ass'n,* 272 Kan. 546, 553, 35 P.3d 892 (2001). With the burden-shifting analysis the complainant initially must present a prima facie case of being fired for exercising his or her workers compensation rights. The elements of a prima facie claim for retaliatory discharge for filing a workers compensation claim are: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination. 272 Kan. at 554. Upon such a showing, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for terminating the employee. Once the employer discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by the employer were merely a pretext for wrongful termination. 272 Kan. 546, Syl. ¶ 5.

In *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (applying Kansas law), the Tenth Circuit Court of Appeals applied the burden-shifting analysis to a retaliatory discharge claim and considered the meaning of *Coleman* in that context. *Bausman,* in its reasoning and result, demonstrates that the

*Coleman* statement does not preclude an employer from invoking the attendance record of an employee who claims a work-related injury as a facially legitimate reason for an employee's termination. However, that invocation may not be enough to entitle the employer to summary judgment.

Bausman worked for Interstate Brands Corp. (IBC) from June 1986 to July 1994. In July 1992, she notified IBC that she had suffered a repetitive stress injury to her wrist, elbow, and shoulder as a result of her work. She underwent surgery for her condition on January 14, 1993. By April 1993, her doctor released her for work without restrictions. More than a year later, on May 2, 1994, Bausman was warned about excessive absences. Immediately after the warning, she was absent for approximately 2 weeks and again toward the end of May 1994. She received a written warning that stated: " '*Any absences in the next six months before 11-25 94 will result in your discharge.*' " 252 F.3d at 1119. Then she was absent for several weeks and was terminated on July 5, 1994. Bausman contended that her absences were on account of her work-related injury. The district court entered summary judgment in favor of IBC. The federal Court of Appeals reversed. 252 F.3d at 1124.

The federal Court of Appeals concluded that Bausman made a prima facie case of retaliatory discharge with the record showing a factual dispute regarding IBC's knowledge of the cause of some of Bausman's absences. 252 F.3d at 1120. It further concluded that IBC's articulated reason for firing Bausman—her attendance record—was facially legitimate. 252 F.3d at 1120. With regard to the question of pretext, the federal Court of Appeals concluded that summary judgment on the issue of pretext was premature:

"To affirm summary judgment, we must be able to conclude that Ms. Bausman 'failed to produce any evidence from which a reasonable inference could be drawn' that IBC's proffered reasons for her termination were 'pretextual.' *Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1291 (10th Cir.2000).

"To show pretext, Ms. Bausman relies upon essentially the same evidence that she earlier relied upon to establish her prima facie case concerning whether IBC knew or should have known that her absences were due to her work-related injury. Under the burden-shifting analysis, although the prima facie presumption of unlawful intent ' "drops out of the picture" once the defendant meets its burden of production, . . ., the trier of fact may still consider the evidence establishing the

plaintiff's prima facie case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual," ' *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) (citations omitted) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255, n. 10, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). And 'a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability,' even absent 'additional, independent evidence of discrimination' or other unlawful intent. *Id.*, 530 U.S. at 149, 120 S. Ct. at 2109.

"It remains uncontroverted that IBC knew Ms. Bausman claimed almost all of her 1994 absences as resulting from her work-related injury, and that she had filed a workers' compensation claim based upon that injury. Just as was drawn in connection with her prima facie case, an inference may be drawn that IBC acted with unlawful retaliatory intent, notwithstanding its asserted 'neutral' reason for the discharge.

. . . .

"On the present record, it also appears that IBC had excused Ms. Bausman's absences due to her work-related injury from September 1992 until early 1994, assessing no attendance points against her, and apparently doing so without benefit of detailed physician's notes. However, her injury did not go away. While Ms. Bausman had received surgical treatment in 1993, and thereafter was taking medications for her repetitive stress injury to her arm, it was apparent from the facts known to her supervisor that she continued to struggle with frequent arm soreness, coupled with gastric disturbances, and that these chronic problems were persisting into May and June 1994. (See Supp. App. 124, 131.) Ms. Bausman's claim for workers' compensation for this injury likewise continued to accrue—a fact which a jury could reasonably conclude IBC managers knew at the time the decision was made to terminate her employment.

. . . .

"These are questions better suited for resolution by the finder of fact based upon the evidence presented and a first-hand opportunity to evaluate the credibility of the witnesses. We cannot say that appellant 'failed to produce any evidence from which a reasonable inference could be drawn' in her favor concerning whether IBC's stated reason for her termination was pretextual. To the contrary, we conclude that Ms. Bausman raised a genuine issue of material fact concerning pretext, and that the summary judgment entered by the district court based upon this element of her retaliatory discharge claim was in error." 252 F.3d at 1122-24.

Use of the burden-shifting analysis in the present case produces the same result as in *Bausman*. Gonzalez made a prima facie case with evidence showing that he sustained a work-related injury and filed a workers compensation claim, NCKRJDF had knowledge of the work-related injury, NCKRJDF terminated his employment,

and there was a causal connection between his work-related injury and the termination. NCKRJDF articulated a legitimate, nonretaliatory reason for terminating Gonzalez. Gonzalez' burden was only to demonstrate a genuine dispute of material fact as to whether NCKRJDF's stated reason was unworthy of belief. To affirm the district court's entry of summary judgment, the court must be able to conclude that Gonzalez failed to produce any evidence from which a reasonable inference could be drawn that NCKRJDF's reason was a pretext. See *Bausman*, 252 F.3d at 1122. Gonzalez showed and the district court found that NCKRJDF knew Gonzalez' absences were due to his work-related injury, that NCKRJDF required no employee other than Gonzalez to speak directly to the Director or Assistant Director, and that NCKRJDF terminated Gonzalez after only one warning about his failing to speak to the Director or Assistant Director, thus raising an inference favorable to Gonzalez.

When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, this court applies the same rules. Where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1275, 38 P.3d 679 (2002). Because reasonable minds could differ as to the conclusions drawn from the evidence in the present case, the entry of summary judgment was improper.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings.