FILED
United States Court of Appeals
Tenth Circuit

April 10, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ROBERT PETERSON,

     Plaintiff-Appellant,

v.

EXIDE TECHNOLOGIES,

     Defendant-Appellee.

No. 11-3077

(D.C. No. 5:09-CV-04122-SAC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

_____

Defendant Exide Technologies terminated Plaintiff Robert Peterson from his employment as a material handler in Defendant's battery manufacturing and distributing plant after Plaintiff was involved in a forklift accident. Plaintiff's termination notice cited his "flagrant disregard of safety rules and practices." At the time of his termination, however, Defendant was on temporary leave under the Family and Medical Leave Act (FMLA) for injuries he suffered during the forklift accident. Plaintiff brought this lawsuit under the FMLA and Kansas state law, alleging Defendant fired him for exercising his FMLA and Kansas workers' compensation rights. The district court granted Defendant summary judgment. We

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

exercise jurisdiction pursuant to 28 U.S.C. § 1291. Because Plaintiff has produced no evidence that his termination was based on the exercise of his statutory rights, rather than his violation of company safety policies, we affirm.

I.

Plaintiff began working for Defendant in 1999. His position as a material handler required him to operate machinery at Defendant's plant in Salina, Kansas. Plaintiff's job description stated in capital letters that "[f]ailure to perform material handling duties in a safe, efficient manner" could subject an employee to "layoff and possible termination." Appellee's App. vol. I at 88 (internal capitalization omitted). In May 27, 2007, Plaintiff was using a forklift to transport pallets of batteries through the plant. The plant's normal lights were off because of maintenance, but the plant was lighted to some extent by fluorescent lighting, sky lights, and ambient light from the doors. In addition, the forklift was equipped with headlights. Nevertheless, Plaintiff complained to his supervisor about the low lighting. On approximately his tenth trip through the plant, Plaintiff was driving in a path wide enough for two forklifts and had just maneuvered around a rolling toolbox. His gaze was momentarily distracted by a flash of light, and when he looked back at his forklift's path, the pallet of batteries was only inches from a bright yellow pole. The pallet hit the pole, causing batteries to fall on the floor, break, and spill acid. Plaintiff's head struck the forklift's rack, causing injuries to his head, neck, and back, as well as some blurred vision. Plaintiff's supervisor took him to the hospital, where he received stitches to his head and was released.

2

Defendant placed Plaintiff on FLMA leave for ten days.

Plaintiff's immediate supervisor conducted an accident investigation in which he documented the accident with photographs and concluded Plaintiff was "going rather fast." Appellee's App. vol. I at 129. Defendant's Human Resources Manager then reviewed the incident report and Plaintiff's personnel file to decide whether to impose discipline. Plaintiff's file contained three written warnings given between 2000 and 2003 for damage to batteries caused by "careless material handling," unauthorized use of machinery, and an unspecified health and safety policy violation. Id. at 154–56. The file also noted Plaintiff had run a forklift into a stationary pole in 2006. In April 2007, the month before his termination, Plaintiff had received a "Performance Expectations" memo, which noted areas for improvement including "[m]ust follow all safety rules at all times" and "[m]ust drive under control at all times, including maintaining a safe speed." Id. at 158. Also in April 2007, Plaintiff's supervisor completed a "Performance Expectations Review," noting that Plaintiff had moved to a different department before his final performance review. In the memo, his supervisor said:

> As of April 18, 2007, [Plaintiff] has not shown significant improvement or consistency in any of the areas previously mentioned in the initial performance expectations memo. Had the scheduled review taken place, I would have recommended that [Plaintiff] be disqualified from material handling in department 134 for the following reasons: 1. Fails to follow safety rules. Does not wear seat belt or respirator at all times. Fails to maintain a safe speed and honk at all intersections. . . .

Id. at 159.

The Human Resources Manager recommended to Defendant's Plant Manager

3

that Plaintiff be terminated based on his violations of safety policies. Upon reviewing a report of the forklift accident and Plaintiff's personnel file, the Plant Manager decided to terminate Plaintiff. Plaintiff's termination notice, delivered four days after the forklift accident, cited his violation of Defendant's safety and health policy relating to "[f]lagrant disregard of safety rules and practices or any other unsafe acts which endanger other employees." Id. at 179. Plaintiff filed this suit, alleging (1) retaliation for exercise of state worker's compensation rights, (2) retaliation in violation of the FMLA, (3) failure to restore in violation of the FMLA, and (4) interference in violation of the FMLA. The district court granted Defendant's motion for summary judgment on all claims, and Plaintiff appealed. We review a grant of summary judgment de novo, applying the same legal standard as the district court. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 997 (10th Cir. 2011).

II.

The FLMA allows qualified employees to take up to twelve weeks of leave during a twelve-month period if "a serious health condition . . . makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of" the rights provided by the FMLA, § 2615(a)(1), or to "discriminate against any individual for opposing any practice" prohibited by the FMLA. § 2615(a)(2). We have recognized two theories of recovery in FMLA suits based on these two provisions in § 2615(a): an "entitlement or interference theory" and a "retaliation or discrimination theory." Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1170 (10th Cir.

4

2006). Plaintiff has asserted both theories, as well as a third theory for "failure to restore." In addition, Plaintiff challenges his termination under Kansas law, which prohibits employers from firing employees who are absent due to work-related injuries and who file or "might file" a workers' compensation claim. Ortega v. IBP, Inc., 874 P.2d 1188, 1191 (Kan. 1994). Although the analysis for each of Plaintiff's claims differs slightly, all four claims fail for the same basic reason: Plaintiff has produced no evidence he was fired for any reason other than his unsafe job performance.

A.

The burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), governs Plaintiff's FMLA retaliation claim. Under this framework, if Plaintiff makes out a prima facie retaliation case, the burden shifts to Defendant to demonstrate "a legitimate, nonretaliatory reason for its termination decision."[1] Metzler, 464 F.3d at 1172. If Defendant meets this burden, the burden shifts back to Plaintiff to "show that there is a genuine dispute of material fact as to whether [Defendant's] explanations for terminating [Plaintiff's] employment are pretextual." Id. Plaintiff can meet this burden by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1290 (10th Cir. 2007) (quoting Morgan v. Hilti,

---

[1] To establish a prima facie case for FMLA retaliation, a plaintiff must show (1) he or she exercised a right protected under the FMLA, (2) the defendant took an action that a reasonable employee would have found materially adverse, and (3) a causal connection exists between the protected activity and the adverse action. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007).

5

Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). We must "consider the[] evidence in its totality" when determining whether Plaintiff has shown pretext. Orr v. City of Albuquerque, 531 F.3d 1210, 1215 (10th Cir. 2008).

Defendant does not contest Plaintiff's prima facie case, but asserts it dismissed Plaintiff for the legitimate reason that he violated company safety policies. Defendant's employee manual lists twenty "common dischargeable type offenses," including "[f]lagrant disregard of safety rules and practices or any other unsafe acts which endanger other employees" and "[c]ontinued and repeated violations of the rules, policies, or procedures [such as] fail[ing] to respond to written warnings and frequent counseling, regardless of the time element." Appellee's App. vol. I at 210–12 (internal capitalization omitted). Defendant cited the first of these offenses as its reason for terminating Plaintiff. According to Defendant's Plant Manager:

> Based on my own review of the photographs and the damage they depicted, I agreed with [Defendant's Human Resources Manager] that . . . Plaintiff was driving too fast at the time of the crash and was not operating his forklift in a safe manner. Such conduct on Plaintiff's part was a flagrant violation of company health and safety policy and posed a threat to the safety of Plaintiff and other Exide employees.

Id. at 177. The Plant Manager also based his decision to fire Plaintiff on the "history of careless and unsafe conduct" reflected in Plaintiff's personnel file. Id. Defendant has adequately demonstrated a nonretaliatory reason for Plaintiff's termination: his repeated safety violations. Thus, the burden shifts back to Plaintiff to show pretext.

Plaintiff argues Defendant's asserted justification is "clearly pretextual" because Defendant "violated its own progressive disciplinary rules." Defendant's disciplinary

6

policy involved the following steps: first written warning, second written warning, indefinite suspension, and discharge. Plaintiff argues Defendant was required to go through each step of its progressive disciplinary policy before firing him. He also argues the disciplinary policy did not allow Defendant to consider violations older than one year in imposing discipline. We have recognized that "disturbing procedural irregularities, including deviations from normal company procedure, provide support for a plaintiff's assertion of pretext." Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1138 n.11 (10th Cir. 2003). But, contrary to Plaintiff's assertion, Defendant did not violate its own progressive disciplinary policy. First, Defendant's disciplinary policy is discretionary, not mandatory. Defendant's employee handbooks states:

> [E]mployees should clearly understand that the extent to which progressive discipline is imposed is in the sole and exclusive discretion of management. Nothing in this policy shall be deemed to limit the right of the company to terminate an employee at any time for any reason.

Appellee's App. vol. I at 208. The handbook's plain wording dooms Plaintiff's argument that he was entitled to progressive warnings before his termination. Second, the policy does not prohibit Defendant from considering older policy violations in its termination decisions. The policy only provides that "[i]f it has been one year or longer since your last disciplinary action, then you will start over" in the discipline process. Id. at 209. It makes clear, however, that "all disciplinary actions remain a permanent part of your file." Id. Furthermore, the policy says failure to respond to written warnings and frequent counseling can lead to discharge "regardless of the time element." Id. at 212. In short, Defendant fully complied with its own employee policy, so no "procedural irregularities"

7

could justify a jury finding of pretext.

Plaintiff makes several other arguments regarding pretext. First, he argues his firing was retaliatory because "[D]efendant created the dangerous conditions under which [Plaintiff] was operating" on the day of the accident by requiring him to work in dim light. We question whether Defendant was at fault, considering Plaintiff's path was lighted by skylights, fluorescent lights, and the forklift headlights. But even if Defendant was careless, this by no means supports a finding of pretext. The question of pretext is "not whether the decision to terminate [Plaintiff] was wise, fair, or correct, but whether [Defendant] reasonably believed at the time of the termination that [Plaintiff] had violated company policy, and acted in good faith upon that belief." Timmerman v. U.S. Bank N.A., 483 F.3d 1106, 1120 (10th Cir. 2007). Plaintiff attempts to undermine Defendant's good faith explanation for the firing by arguing Defendant "forced him to violate the rule" by requiring him to work in a dark plant. If an employer actually forced an employee to violate a company policy and then fired the employee for that violation, a jury could conclude the employer's justification was not in good faith. But Plaintiff has introduced at most a scintilla of evidence to support his assertion that the dim lighting made it "impossible" to drive safely. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (requiring more than a "scintilla of evidence" to defeat summary judgment). He provided only his deposition testimony that he felt "uncomfortable driving through the plant with it being that dark." Appellant's App. vol. I at 183. This does not show Defendant made it "impossible" to comply with its safety policy or "forced" Plaintiff to violate the policy. Defendant could have reasonably expected Plaintiff to drive at such a

8

speed and in such a manner as to avoid accidents, even with less than normal lighting. So the lack of light does not undermine Defendant's good faith in firing Plaintiff or render Defendant's explanation for the termination unworthy of credence.

Second, Plaintiff claims pretext exists because the forklift accident was a "minor incident." Whether the accident was "minor" is at least questionable. But even if it was, we see nothing that prevents Defendant from firing employees for minor safety violations. Particularly where, as here, the employee has a record of unsafe work performance, even a minor infraction could be the last straw. Firing an employee based on a violation of company policies is not "transparently pretextual" as Plaintiff argues. See Campbell, 478 F.3d at 1291 (discipline based on policy violations was not evidence of pretext); Twigg, 659 F.3d at 1008–09 ("[A]n employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences . . . ."). Defendant could have reasonably believed Plaintiff violated its safety policies by driving the forklift in an unsafe manner. So the allegedly "minor" nature of the forklift accident is not evidence of pretext.

Finally, Plaintiff makes one last attempt to create a fact issue regarding pretext. He argues his supervisor's conclusion that Plaintiff was driving the forklift "rather fast" is controverted because one bystander "did not see or hear anything unsafe or improper." Plaintiff fails to mention this bystander did not actually see the accident or how fast Plaintiff was driving. Appellant's App. vol. I at 327. So this testimony does not rebut the supervisor's conclusion. More importantly, this testimony does not create an issue of material fact regarding pretext. Even if Plaintiff was driving at an appropriate speed,

9

Defendant could reasonably conclude the accident resulted from unsafe driving. The bystander's testimony does not produce "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's explanation of the firing sufficient to survive summary judgment. Campbell, 478 F.3d at 1290.

Plaintiff has produced no evidence to undermine Defendant's nonretaliatory explanation for the termination. Aside from the fact Plaintiff was on FMLA leave when he was fired, no evidence suggests a causal connection between Plaintiff's firing and his exercise of FMLA rights. Even "very close temporal proximity" is not enough to establish pretext without "circumstantial evidence or retaliatory motive." Metzler, 464 F.3d at 1172 (internal quotation marks omitted). Therefore, the district court properly granted summary judgment on Plaintiff's FMLA retaliation claim.

B.

Plaintiff's FMLA interference claim, unlike his retaliation claim, is not subject to the McDonnell-Douglas burden-shifting analysis. Instead, once Plaintiff has made out a prima facie case, Defendant may defend against the claim by showing Plaintiff "would have been dismissed regardless of the employee's request for, or taking of, FMLA leave."[2] Twigg, 659 F.3d at 1006 (quoting Metzler, 464 F.3d at 1180). Once again, Defendant does not contest Plaintiff's prima facie case, so Defendant bears the burden of proving it would have dismissed Plaintiff anyway. As discussed above, Defendant has

---

[2] A prima facie claim for FLMA interference requires a showing that (1) the plaintiff was entitled to FMLA leave, (2) some adverse action by the employer interfered with the employee's right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of the employee's FMLA rights. Metzler, 464 F.3d at 1180.

adequately shown it terminated Plaintiff for his violation of company safety policies. This justification for Plaintiff's termination would have existed regardless of whether he had injured himself during the accident. No evidence suggests Defendant fired Plaintiff because he took FMLA leave. So Plaintiff "would have been dismissed regardless" of whether he took leave, and summary judgment was appropriate on his interference claim.

C.

We next consider Plaintiff's claim for "failure to restore" in violation of the FMLA. Defendant argues this is not a separate claim, pointing out that we have recognized only two theories of FMLA recovery: interference claims and retaliation claims. Metzler, 464 F.3d at 1170. Defendant argues this claim is simply another form of FMLA interference claim. Defendant is correct. Employees who take FMLA leave have a right to be restored to their previous "position of employment" with "equivalent employment benefits." 29 U.S.C. § 2614(a)(1). But an employee has no reason to enforce this right to restoration until an employer "interfere[s] with, restrain[s], or den[ies]" the exercise of the right. § 2615(a)(1). And an FMLA interference claim is precisely how a plaintiff challenges such interference. So a failure to restore claim is really a specific type of interference claim—one that enforces the right to reinstatement. See Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004); Kohls v. Beverly Ents. Wis., Inc., 259 F.3d 799, 804 (7th Cir. 2001). Accordingly, Plaintiff's failure to restore claim fails for the same reason as his interference claim, and summary judgment was appropriate.

D.

11

We finally turn to Plaintiff's state law claim. Kansas workers' compensation retaliation claims are subject to a burden shifting framework identical to that of McDonnell Douglas. Gonzalez-Centeno v. N. Cent. Kan. Reg'l Juvenile Det. Facility, 101 P.3d 1170, 1177 (Kan. 2004). Once Plaintiff has made out a prima facie case, the burden shifts to Defendant to "articulate a legitimate, nonretaliatory reason for terminating the employee."[3] Id. If Defendant meets this burden, the burden shifts back to Plaintiff to show the reasons offered for the termination were "merely a pretext for wrongful termination." Id. At this stage, Plaintiff's summary judgment burden differs from his burden on the FMLA claim because the ultimate burden at trial on his state law claim is clear and convincing evidence. Ortega v. IBP, Inc., 874 P.2d 1188, 1198 (Kan. 1994), overruled on other grounds by In re B.D.-Y., 187 P.3d 594, 697 (Kan. 2008). Under Kansas law, a plaintiff "can successfully oppose a motion for summary judgment by a preponderance of the evidence." Bracken v. Dixon Indus., Inc., 38 P.3d 679, 683 (Kan. 2002). Summary judgment in federal court, however, is guided by the ultimate evidentiary burden that applies at trial. Anderson, 477 U.S. at 255. Thus, a plaintiff in federal court, in order to defeat summary judgment on a Kansas workers' compensation retaliation claim, must "set forth evidence of a *clear and convincing nature* that, if believed by the ultimate factfinder, would establish that plaintiff was more likely than not

---

[3] To make out a prima facie retaliation case under Kansas law, a plaintiff must show (1) he filed a claim for workers compensation benefits or sustained an injury for which he might assert a future claim, (2) the employer had knowledge of the plaintiff's workers compensation claim injury, (3) the employer terminated the plaintiff's employment, and (4) a causal connection existed between the protected activity or injury and the termination. Gonzalez-Centeno, 101 P.3d at 1177.

the victim of illegal retaliation by [his] employer."[4] <u>Foster v. Alliedsignal, Inc.</u>, 293 F.3d 1187, 1195 (10th Cir. 2002) (emphasis added).

As we discussed above, Plaintiff has not introduced sufficient evidence of pretext to overcome summary judgment on his FMLA claims. His showing is particularly inadequate in light of the higher evidentiary standard—clear and convincing evidence—that governs his Kansas workers' compensation retaliation claim. <u>See</u> <u>In re B.D.-Y.</u>, 187 P.3d at 601 (defining "clear and convincing evidence" as evidence "sufficient to establish that the truth of the facts asserted is 'highly probable'"). In short, Plaintiff has not produced sufficient evidence to support a jury finding that Defendant's stated reason for firing him was pretextual. So his state law claim, like his FMLA claims, cannot survive summary judgment.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

---

[4] The district court incorrectly said Plaintiff's burden was to "prove" retaliation by clear and convincing evidence, a statement Plaintiff claims is reversible error. <u>Peterson v. Exide Techs.</u>, 2011 WL 677150 at *5 (D. Kan. Feb. 16, 2011). Of course, a plaintiff's burden in opposing summary judgment is not to *prove* the case, but to introduce sufficient evidence that "a jury could reasonably find . . . that the plaintiff proved his case by the quality and quantity of evidence required by the governing law." <u>Anderson</u>, 477 U.S. at 254. But we review the district court's application, not its recitation, of the summary judgment standard. And despite its slip of the pen, the district court applied the correct standard.